UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| STEPHANIE TAMAKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:23-cv-00312-LEW |
| | ) | |
| ATSUSHI TAMAKI a/k/a ATCHAN TAMAKI, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT AND MOTION TO STAY AND VACATE EXECUTION OF JUDGMENT**

Defendant Atsushi Tamaki, a/k/a Atchan Tamaki, seeks relief from the default judgment entered against him on April 26, 2024 (ECF No. 50), and moves to stay and vacate execution of that judgment (ECF No. 54). For the following reasons, I deny Mr. Tamaki's request for relief and stay the writ of execution (ECF No. 30) conditioned on the Defendant posting a bond and satisfying other requirements imposed to protect the Plaintiff's interests as a judgment creditor.

## BACKGROUND

On August 7, 2023, Plaintiff Stephanie Tamaki filed a Complaint against her adoptive father, Atsushi Tamaki, alleging claims for sexual assault, battery, and intentional infliction of emotional distress (ECF No. 1). The estate of the Plaintiff's late sister, Jennifer Rutka, settled a lawsuit involving similar claims against Mr. Tamaki in February 2023. *See Rutka v. Tamaki*, No. 2:21-cv-00180-JCN (D. Me., dismissed March 17, 2023). Attorney

1

Walter McKee represented Mr. Tamaki in that case. Attorney Robert Levine represented Ms. Rutka and, later, her estate, and is Ms. Tamaki's counsel here.

Before filing the Complaint in this matter, Attorney Levine sent Attorney McKee a demand letter on behalf of Ms. Tamaki. *See* Pl.'s Resp. to Def.'s Mot. for Relief from J. ("Resp." (ECF No. 51)), Exs. 1 & 2. The demand letter prompted Mr. Tamaki to file a grievance against Attorney Levine with the Maine Board of Overseers as well as a pro se civil complaint in state court alleging extortion. *See* Resp., Ex. 5. The Board of Overseers dismissed the grievance on September 11, 2023, and the state court dismissed Mr. Tamaki's civil suit on January 9, 2024. *See* Resp., Exs. 3 & 4.

Ms. Tamaki brought this lawsuit when efforts to negotiate a settlement agreement failed. After filing the Complaint, Ms. Tamaki tried unsuccessfully to serve the Defendant on multiple occasions using service agent Sammy Rinaldi. *See* Resp., Ex. 6 at 3:6–5:5 (Rinaldi testimony as to failed service attempts). On October 6, 2023, Ms. Tamaki moved for service by alternate means—specifically by mailing copies of the Complaint, summons, and an order for alternate service to the Defendant's business and residence and also by leaving copies of the same at those locations (ECF No. 5). I referred the motion to Magistrate Judge John C. Nivison, who granted it on October 13, 2023 (ECF No. 6). Ms. Tamaki effected service by the approved alternate means on October 26, 2023 (ECF No. 7). When the November 16, 2023, answer deadline passed without a response from the Defendant, Ms. Tamaki moved for entry of default (ECF No. 11), which was granted on November 21, 2023 (ECF No. 12).

Ms. Tamaki moved for default judgment on December 28, 2023 (ECF No. 15).  That same day, I granted Ms. Tamaki's Motion for Attachment and Attachment on Trustee Process (ECF No. 10) in the amount of $2,000,000.00 (ECF No. 13).  I held a damages hearing on March 28, 2024 (ECF No. 20), and entered default judgment in the amount of $4,000,000.00 for Ms. Tamaki and against Mr. Tamaki the next day (ECF No. 23).[1]  A writ of execution as to the default judgment issued on May 29, 2024 (ECF No. 30).  Mr. Tamaki, proceeding pro se, filed letters in this Court on June 27, June 28, and July 2, 2024, that I construed as a motion for relief from judgment and attachments thereto (ECF Nos. 41, 42, 45).  After retaining counsel, Mr. Tamaki filed an amended motion for relief on July 5, 2024 (ECF No. 50).  A week later, Mr. Tamaki moved to stay execution of the judgment and to stay and vacate the writ of execution that issued in May (ECF No. 54).[2]

## LEGAL STANDARD

Rule 60(b) governs motions for relief from final judgment.  Fed. R. Civ. P. 60(b).  This remedial rule "normally receives a liberal construction from courts concerned that cases not be decided in default against parties who are inadvertently absent," though "the liberal construction is usually reserved for instances where error is due to failure of attorneys or other agents to act on behalf of their clients, not where the client's own internal

---

[1] On April 26, 2024, I entered an Amended Default Judgment that revised the case caption to account for Mr. Tamaki's name change (ECF No. 26).  The Amended Default Judgment also restated my conclusions that Mr. Tamaki was liable to the Plaintiff for sexual assault and battery as well as for intentional infliction of emotional distress.  Am. Default J. at 8–9.

[2] The Defendant's Motion to Stay (ECF No. 54) also included a request to continue the disclosure hearing scheduled for July 16, 2024.  Magistrate Judge John C. Nivison granted the request to continue and noted that "the hearing will be rescheduled following the Court's ruling on the Motion to Vacate Final Judgment and Order."  (ECF No. 57.)

procedures are at fault." *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974).  "[R]elief under Rule 60(b) is extraordinary in nature and . . . motions invoking that rule should be granted sparingly." *Rivera-Velázquez v. Hartford Steam Boiler Inspection & Ins. Co.*, 750 F.3d 1, 3 (1st Cir. 2014) (quoting *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir. 2002)).  "The rule must be applied so as to recognize the desirability of deciding disputes on their merits, while also considering 'the importance of finality as applied to court judgments." *Dávila-Álvarez v. Escuela de Medicina Universidad Central del Caribe*, 257 F.3d 58, 64 (1st Cir. 2001) (internal quotation marks omitted).  At minimum, a party seeking relief under Rule 60(b) must establish "that 'his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he has the right stuff to mount a potentially meritorious . . . defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted." *Rivera-Velázquez*, 750 F.3d at 3–4 (quoting *Karak*, 288 F.3d at 19).  *But see* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2857 (3d ed.) ("Although 'extraordinary [or exceptional] circumstances' should only be required under catchall clause (6) of the rule, some courts have erroneously restricted relief under other provisions of the rule by reading that requirement into earlier clauses.").

Under Rule 60(b)(1), courts may relieve a party from a final judgment because of "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  "Deciding what constitutes excusable neglect is a case-specific exercise, which requires 'an equitable determination, taking into account the entire facts and circumstances surrounding the party's omission.'  The pertinent facts and circumstances typically include

4

such things as 'the danger of prejudice to the non-movant, the length of the delay, the reason for the delay, and whether the movant acted in good faith.'" *Rivera-Velázquez*, 750 F.3d at 4 (quoting *Dávila-Álvarez*, 257 F.3d at 64). Among those factors, "the most important is the reason for the particular oversight." *Id.* (quoting *Nansamba v. N. Shore Med. Ctr., Inc.*, 727 F.3d 33, 39 (1st Cir. 2013)). "Demonstrating excusable neglect is a 'demanding standard'" for the party seeking relief; the trial court "'has wide discretion'" to determine whether the moving party has made the requisite showing. *Santos-Santos v. Torres-Centeno*, 842 F.3d 163, 169 (1st Cir. 2016) (quoting *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 164 (1st Cir. 2004)). As to timing, a motion under Rule 60(b)(1) must be made "no more than a year after the entry of the judgment." Fed. R. Civ. P. 60(c)(1).

## DISCUSSION

### A.  MOTION FOR RELIEF FROM JUDGMENT

#### 1.  The Parties' Positions

##### i.  *Defendant's Initial Motion (ECF No. 41; "Mot. for Relief")*

In his original motion for relief from judgment, filed pro se, Mr. Tamaki acknowledges an attempt at service in late August 2023. Mot. for Relief at 1. Mr. Tamaki asserted that he could not talk with the service agent because he was busy receiving and making seafood shipments at the time, and that he "couldn't sign what [he] didn't know." Mot. for Relief at 1. Mr. Tamaki also conceded that the service agent came once more while he was overseas for business. *Id.* He acknowledged further that Plaintiff's counsel had "sent us letters several times, but my wife threw them away." *Id.*

5

*ii. Defendant's Amended Motion (ECF No. 50; "Am. Mot. for Relief")*

After retaining counsel, Mr. Tamaki refined his request for relief in an amended motion filed on July 5, 2024.  The amended motion seeks relief on the basis of mistake, inadvertence, surprise, and excusable neglect.  Am. Mot. for Relief at 2.  In support, Mr. Tamaki denies the allegations against him and argues he was unaware of the underlying lawsuit until June 26, 2024, a day after he learned that a lien had purportedly been placed on his business to partially satisfy the default judgment.  Am. Mot. for Relief at 6.  Mr. Tamaki contends that neither he nor Haiying Yang, his ex-wife and business associate with whom he lived during the period when service was allegedly attempted, were personally served, and both were unaware if documents related to this case were mailed to their home. Am. Mot. for Relief at 4–5, 7.  Mr. Tamaki explains that Ms. Yang, who "was not and is not a fluent speaker or reader of the English language," "would sometimes be at home and process the mail while [he] was at work during this period of time."  Am. Mot. for Relief at 4–5.  Mr. Tamaki claims Ms. Yang "believed that most such mail received at the home was junk mail and not important and she disposed of it as junk mail."  Am. Mot. for Relief at 5. Mr. Tamaki did not monitor Ms. Yang's mail sorting or discuss it with her.  Am. Mot. for Relief at 5.

Mr. Tamaki characterizes the possibility that Ms. Yang discarded the summons and complaint after mistaking it for junk mail as inadvertence for which relief should be granted.  Am. Mot. for Relief at 5.  In the same vein, he argues that "his allowing [Ms. Yang] to process and dispose of such mails" despite his "awareness of her difficulty and deficiencies with the English language" is also mistake, inadvertence, and excusable

neglect that justify vacating the original and amended default judgments. *Id.* at 5. Mr. Tamaki also maintains he was unaware that the summons and complaint were delivered to his business because he was out of town in October 2023 when someone came there to drop off a letter from an attorney. *Id.* at 6. He concedes that Ms. Yang was aware that a service agent dropped off papers at his office but says she "did not accept or open the envelope and returned it to the person who had dropped it off." *Id.* Mr. Tamaki explains that Ms. Yang did not tell him about the October 2023 incident at the time "due to her concerns for [his] health given his heart problems and high blood pressure conditions," and that she only informed him about it in late June 2024. *Id.*

In light of the foregoing, Mr. Tamaki argues that his request for relief should be granted because there is no evidence that he ever received the summons and complaint or that Ms. Yang received and intentionally discarded those documents to evade service. *Id.* at 7. In sum and substance, Mr. Tamaki shifts most of the blame for the alleged mistake, inadvertence, and excusable neglect to Ms. Yang and insists that, in any event, neither he nor she "should have been aware of or should have been on the lookout for a lawsuit." *Id.* at 8.

> ### iii.  *Plaintiff's Corrected & Amended Response (ECF No. 56; "Am. Resp.")*[3]

For her part, Ms. Tamaki contends that the Defendant, who acknowledged failed attempts at service during the months after she filed the Complaint, had "every

---

[3] The Plaintiff initially filed a response opposing the Defendant's Motion for Relief on July 5, 2024 (ECF No. 5). That same day, the Defendant field an Amended Motion for Relief (ECF No. 50). The Plaintiff subsequently filed a Corrected and Amended Response to the amended motion (ECF No 56) that references the documents she attached as exhibits to her original Response, among them a transcript of service agent Sammy Rinaldi's testimony (ECF No. 51-6). *See* Am. Resp. at ¶¶ 12–14, 29, 72. Having been incorporated

reason . . . to expect to be served," Am. Resp. at ¶ 67, and that Mr. Tamaki actively attempted to evade service, *id.* at ¶ 80. She also argues that Mr. Tamaki does not have a meritorious defense given the allegedly inculpatory statements he made under oath while testifying in the related case her late sister brought against him. *Id.* at ¶¶ 70–75. The upshot of Ms. Tamaki's response is that granting a Rule 60(b) motion is extraordinary relief appropriate only in exceptional circumstances not present here. *Id.* at ¶¶ 100–04.

### 2. Analysis

Construing Rule 60(b) liberally to avoid entering a default judgment against an inadvertently absent party, *Greenspun*, 492 F.2d at 382, I conclude that Mr. Tamaki has established that his motion is timely and—taking his blanket denial of the allegations against him at face value notwithstanding purportedly inculpatory statements he made while testifying in a related case—that he could mount a potentially meritorious defense by holding the Plaintiff to her burden of proof if I were to vacate the default judgment. However, Mr. Tamaki fails to demonstrate that his own mistake, inadvertence, or excusable neglect justify granting the extraordinary relief of vacating a final judgment. Accordingly, as explained below, I deny his request for relief from judgment.

Mr. Tamaki cites a mix of mistake, inadvertence, and excusable neglect as reasons for vacating the judgment along with a passing, and unpersuasive, nod to surprise. Without conceding that the summons and complaint were ever delivered to his home and/or business, Mr. Tamaki attributes the mistake and inadvertence to Ms. Yang, his ex-wife and

---

into the Amended Response, those attachments remain relevant, and I have reviewed and considered them in resolving the Amended Motion for Relief.

business associate who is not a party to this case, for discarding most of the couple's mail as junk.  He admits to being neglectful insomuch as he allowed Ms. Yang to screen their mail despite knowing about her limited facility with English.  That neglect might be excusable if Mr. Tamaki had no reason to expect that he might be served with a lawsuit. But Mr. Tamaki admits that "[s]ometime in late August of 2023," someone "tried to serve me complaints." Mot. at 1.[4]  Six months prior, Mr. Tamaki settled the lawsuit brought by the estate of his other adoptive daughter, *Rutka v. Tamaki*, Case No. 2:21-cv-00180-JCN (ECF No. 122), reducing the possibility that the agent who attempted service had papers in hand related to that lawsuit in August 2023.  From those facts I infer that Mr. Tamaki was aware as early as August 2023 that a party other than Ms. Rutka's estate was trying to serve him with a complaint.  Those facts do not require concluding that Mr. Tamaki understood that Ms. Tamaki was the party trying to effect service.  But I view Mr. Tamaki's general awareness of attempted service as sufficient to put him on notice that he should have expected to be served again, such that delegating mail-screening responsibilities to Ms. Yang at that time was negligence, if not evasion, that I need not excuse.

What's more, the testimony of service agent Sammy Rinaldi, a Cumberland County deputy sheriff with forty-one years in the force, supports concluding that Mr. Tamaki actively evaded service at least once, after the Order permitting alternate service entered in October 2023.  Rinaldi testified that he tried to effect drop service at Mr. Tamaki's office

---

[4] Although the Defendant filed an Amended Motion for Relief after retaining counsel, I still consider statements made in his original motion to the extent the Amended Motion does not disavow or contradict them.  *Cf. Wiseman v. Reposa*, 463 F.2d 226, 227 (1st Cir. 1972) (per curiam) ("As a matter of pleading, the original complaint had disappeared.  As an admission against interest, it had not.").

after several failed attempts at personal service, including on one occasion when Mr. Tamaki "took off down the hallway" upon seeing him. (ECF No. 51-6 at 3:19–20.) Rinaldi recounted further that Mr. Tamaki's employee then followed him as he left the office, "grabbed [him] by the jacket, pinned [him] up against the wall, and stuffed the papers in [his] jacket." (ECF No. 51-6 at 3:23–25.) Rinaldi's subsequent testimony supports concluding that Mr. Tamaki recognized him that day because Rinaldi had previously served Mr. Tamaki in another case. (ECF No. 51-6 at 4:8–5:20.) Rinaldi's testimony undercuts Mr. Tamaki's purported reason for delay—the most important factor in deciding whether excusable neglect justifies vacatur—and also suggests that Mr. Tamaki acted in bad faith by actively evading service.

Ultimately, whether Mr. Tamaki's excusable neglect justifies vacating the default judgment is an exercise of my discretion. Based on the totality of the circumstances, I conclude that Mr. Tamaki falls well short of meeting the "demanding standard" of demonstrating excusable neglect—or any other basis for granting him relief from judgment under Rule 60(b)(1). The motion for relief from judgment is denied.

## B. MOTION TO STAY EXECUTION OF JUDGMENT

Mr. Tamaki also moves to stay and vacate execution of the default judgment under Rule 62(f) and, alternatively, under Rule 60(b). Although neither rule affords Mr. Tamaki the relief he seeks, Rule 62(b) does—with some conditions.

First, a brief discussion of the rules Mr. Tamaki invokes to explain why they are inapt for present purposes. Rule 62(f) provides: "If a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor

10

is entitled to the same stay of execution the state court would give."  Fed. R. Civ. P. 62(f).

"Under Maine law, it is the filing of an attested copy of the [writ of] execution (rather than

the judgment itself) that operates to create a lien with a meaningful priority on a judgment

debtor's real or personal property."  *Irving v. Town of Camden*, No. 2:10-cv-00367-MJK,

2013 WL 1249065, at *1 (D. Me. Mar. 26, 2013);[5] *see* 14 M.R.S. §§ 4651-A(1), (2), (6)

(governing "Execution liens").[6]

Mr. Tamaki asserts that the Plaintiff "filed and recorded . . . a lien against [his]

property" on June 10, 2024.  Mot. to Stay at 7.  In support, Mr. Tamaki attaches a report to

his Motion to Stay, allegedly from the Cumberland County Registry of Deeds' website,

and asks the Court to take judicial notice of the same.  Mot. to Stay at 7 & Ex. 1; *see Gent

v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of facts

from a government website that were not subject to reasonable dispute).  The report is light

on particulars.  It identifies: (1) the "Document Type" as "Court"; (2) the Defendant as

"Grantor"; (3) the Plaintiff as "Grantee"; (4) the date the document was filed (June 10,

2023, twelve days after the writ of execution issued); and (5) the book, volume, and page

numbers where the document was purportedly recorded in the country registry

("40796/336").  Mot. to Stay, Ex. 1.  Relying only on that limited and somewhat cryptic

---

[5] Pursuant to 28 U.S.C. § 636(c), Magistrate Judge Margaret J. Kravchuk entered this Order with the consent of the parties to that case.  *See Irving v. Town of Camden*, No. 2:10-cv-00367-MJK, (ECF No. 13).

[6] In addition to recording a writ of execution, a turnover or sale order entered pursuant to 14 M.R.S. § 3131 also "constitutes a lien against the property which is the subject of the order."  14 M.R.S. § 3131(9). Because no disclosure hearing has yet been held to determine Mr. Tamaki's ability to satisfy the judgment against him—a prerequisite to entering a turnover or sale order under Maine law—no such lien exists here. *See id.* §§ 3131(1), (2) (turnover and sale orders premised on property disclosures made by a judgment debtor and exemption determinations made by the court at a prior hearing); *see also id.* § 3125(1) (governing disclosure hearings involving judgment debtors).

information, I am unsure whether the document referenced in the report is the default judgment or the writ of execution in this case. Given that ambiguity, and because only the filing of a writ of execution suffices to create a judgment lien under Maine law, I cannot determine conclusively whether a judgment lien exists on Mr. Tamaki's property. Accordingly, the Defendant is not entitled to "the same stay of execution the state court would give" under Rule 62(f). Fed. R. Civ. P. 62(f).

Mr. Tamaki's request in the alternative, under Rule 60(b), meets the same swift end. Mr. Tamaki implies that Rule 60(b) allows the court to impose a stay and vacate the default judgment "on terms that are just" and proceeds to seek a stay conditioned on him posting a bond set by the Court. Mot. to Stay at 8–9. Although Rule 60(b) allows courts to grant relief from a final judgment "[o]n motion and just terms," it is not the appropriate vehicle for a stay request. Fed. R. Civ. P. 60(b). For the reasons stated above, Mr. Tamaki is not entitled to relief from judgment under Rule 60(b), which relief, in any event, does not encompass staying a writ of execution.

Instead—and as Mr. Tamaki's alternative argument implies despite its express references to Rule 60(b), Rule 62(b) governs stays of proceedings to enforce a judgment by bond. Rule 62(b) provides:

> At any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security.

Fed. R. Civ. P. 62(b). Courts have broad discretion to set a bond that, once posted, stays a writ of execution. *See Acevedo-García v. Vera-Monroig*, 296 F.3d 13, 17 (1st Cir. 2002)

("The nature and the amount of the bond is entrusted to the discretion of the trial court.").
As to the bond amount, this District's local rules require that "a bond . . . staying execution
of a money judgment *shall* be in the amount of the judgment plus ten percent (10%) of the
amount to cover interest and any award of damages for delay plus Five Hundred Dollars
($500) to cover costs, unless the Court directs otherwise."   D. Me. Local R. 65.1(c)
(emphasis added); *see* Fed. R. Civ. P. 65.1 (applicable "[w]henever [the Federal Rules of
Civil Procedure] require or allow a party to give security"); 11A Charles Alan Wright &
Arthur R. Miller, *Federal Practice and Procedure* § 2971 (3d ed.) (same).

Consistent with Local Rule 65.1(c), bond is set in the amount of $4,400,500.00.[7]
The Defendant shall post the bond with the Clerk of this Court within 60 days of the
issuance of this Order.   The stay shall take effect once Mr. Tamaki posts the bond and shall
last through the deadline for Mr. Tamaki to appeal this Order to the extent it denies his
Motion for Relief from Judgment or, alternatively, through resolution of that appeal if filed.
Posting the bond as set may have the collateral effect of vacating the existing attachment
on Mr. Tamaki's property under Maine law.  *See* 14 M.R.S. § 4613; *see* Order on Plaintiff's
Mot. for Attachment (ECF No. 13) at 1 (ordering attachment under Fed. R. Civ. P. 64,
which "provides that provisional remedies like attachment are available in a federal court
to the extent they would be available in a state court within the District").   Accordingly,
the stay includes an additional condition, one that Mr. Tamaki himself proposes: Mr.
Tamaki shall not sell, transfer, convey, encumber, pledge or in any other manner, other

---

[7] As Local Rule 65.1(c) requires, this amount reflects the sum of the judgment against Mr. Tamaki in this
case ($4,000,000.00) plus ten percent of that judgment ($400,000.00) plus $500.00 for costs.

than is reasonably necessary to provide for his cost of living and to practice or engage in a profession or occupation, dissipate any assets or any other things or right of any value whatsoever.   Additionally, the stay is conditioned on Mr. Tamaki submitting to all reasonable post-judgment discovery pursuant to Rule 69(a)(2) for the duration of the stay.

Finally, to the extent Mr. Tamaki pairs his alternative argument for a stay with a request to vacate the writ of execution, that request is denied.   Mr. Tamaki offers no argument to justify that course of action and, as I explained in denying his Motion for Relief from Judgment, I find no independent basis for granting such extraordinary relief.

## CONCLUSION

For the foregoing reasons, the Defendant's Amended Motion for Relief from Judgment (ECF No. 50) is **DENIED**, and the Defendant's Motion to Stay and Vacate Execution of Judgment under Rules 60(b) and 62(f) of the Federal Rules of Civil Procedure (ECF No. 54) is **DENIED**.   Further, it is **ORDERED** that the writ of execution (ECF No. 30) shall be **STAYED** under Rule 62(b), conditioned on the Defendant's compliance with the following requirements:

1. Defendant shall post and file a bond in the amount of $4,400,500.00 with the Clerk of Court as soon as reasonably practicable after entry of this Order, but in any event no later than 60 days from the date of this Order.   The stay shall take effect once the Defendant posts bond and last through the deadline for the Defendant to appeal this Order to the extent it denies his Amended Motion for Relief from Judgment or, alternatively, through resolution of that appeal if filed.   The stay may be dissolved or modified upon appropriate motion and showing of good cause to this Court;

2.  The Defendant shall not sell, transfer, convey, encumber, pledge or in any other manner, other than is reasonably necessary to provide for his cost of living and to practice or engage in a profession or occupation, dissipate any assets or any other things or right of any value whatsoever while the stay remains in effect; and

3.  The Defendant shall submit to all reasonable post-judgment discovery pursuant to Rule 69(a)(2) for the duration of the stay.

SO ORDERED.

Dated this 2nd day of August, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge