UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

STEPHANIE TAMAKI )
)
    Plaintiff, )
) Civil Number
v. ) 23-312-LEW
)
ATSUSHI TAMAKI )
)
    Defendant. )

BRIEF IN SUPPORT OF MOTION TO RECONSIDER INDICATIVE RULING

On January 12, 2026, this Court held a hearing on Plaintiff's Motion to Reconsider the Court's Indicative Ruling, entered on June 17, 2025 (ECF 90). The hearing consisted of the testimony of Sam Rinaldi, James Adams and Mr. Tamaki. Several exhibits were admitted as well.

    I.    DISCUSSION

    A. Mr. Tamaki was personally served, thereby rendering defendant's claims about the validity of the Alternative Service Order moot.

What became abundantly clear during the hearing was that Mr. Tamaki was personally served with process, regardless of the Order for Alternative Service. Therefore, Defendant's argument that the Order for Alternate Service was somehow invalid because Deputy Rinaldi did not previously go the residence of Mr. Tamaki enough times to constitute due diligence, is rendered moot. The

1

evidence, established during Deputy Adams' testimony, demonstrates that Deputy Adams went to Mr. Tamaki's house on October 26, 2023; that Mr. Tamaki answered the door at his house; that Mr. Adams introduced himself and advised that he had paperwork for Mr. Tamaki; and that Mr. Tamaki told him that he was not going to accept the paperwork. It further demonstrates that Mr. Tamaki then slammed the door in Deputy Adams' face, but not before Deputy Adams was able to place the Summons and Complaint in Mr. Tamaki's doorway. This is more than sufficient service pursuant to F.R.Civ.P., Rule 4.

When determining sufficiency of service of process, federal courts look to the law of the State where the process was served. Under Rule 4(e), service upon an individual within a judicial district of the United States may be effected by following the law of the State in which the district court is located. Thus, in this case, Maine law applies to whether Mr. Tamaki was sufficiently served.

The Law Court, in *T.D. Banknorth v. Hawkins*, 5 A.3d 1042 (Me. 2010), held that placing the summons and complaint in the door of defendant's residence was sufficient where the deputy stood outside the defendant's residence and spoke to the defendant from outside the residence, telling him that he was being served with process, and the defendant refused to come to the door to accept the papers. *Id*. at 1046. The Law Court went on to observe that it had never equated personal service with "in-hand" service and would be loath to do so where "as here, the

2

defendant was attempting to evade service." *Id*. The Court cited with approval *U.S. Sec. & Exch. Comm. v. Reinhard*, 352 F. App'x 309, 313—14 (11th Cir. 2009), a case directly on point with this case. *Id*.  There, the defendant answered the door but retreated into his house when confronted by the process server. The 11th Circuit held that service was sufficient by leaving the process in the door.  Accordingly, pursuant to Maine case law, Deputy Adams leaving the summons and complaint in Mr. Tamaki's door after Mr. Tamaki refused to allow it to be handed to him, is sufficient personal service. The Court has previously found that Mr. Tamaki actively evaded service.[1] The inquiry should end there, as, once served, there was no need to employ the Alternative Service Order issued by the Court.

B. The Alternative Service Order was valid as due diligence was established by Attorney Levine's Affidavit as well as the testimony of both process servers.

Even if the Court finds that the alternate service was the only service that was effectuated in this case, the Alternative Service Order was valid as it was obtained after due diligence failed in getting Mr. Tamaki served. [2]

---

[1] In its Order on Defendant's Motion to Vacate Judgment, the Court found that Mr. Tamaki actively evaded service. See ECF 59, Page 10.
[2] Per discussions after the hearing on January 12, Defendant is not claiming that the Order was not carried out correctly.

Not only did Deputy Rinaldi testify for the second time in this case, but his testimony was bolstered by the testimony of Deputy Adams, who accompanied him on two of the service attempts. The reason for Deputy Adams to accompany Deputy Rinaldi was the Defendant's prior attempts to evade service; exactly what was alleged in the affidavit in support of alternative service. Not only was Deputy Rinaldi concerned about being recognized by the Defendant, but he was also concerned that the Defendant would recognize his vehicle. Deputy Adams made two trips with Deputy Rinaldi; one before drop service was authorized and one after. But the first trip was necessitated by a prior attempt at that residence. That prior trip is reflected by the notes on the civil process worksheet, noting "waiting for a call from attorney" and "rec'd (9/8/23) serve at 133 Rivers Edge off Congress St." Plaintiff's exhibit 1.

Rule 4(g)(1) requires as follows:

(A) That the moving party has demonstrated due diligence in attempting to obtain personal service of process in a manner otherwise prescribed by Rule 4 or by applicable statute;

(B) The identity and/or physical location of the person to be served cannot reasonably be ascertained, or is ascertainable but it appears the person is evading service; and

(C) The requested method and manner of service is reasonably calculated to provide actual notice of the pendency of the action to the party to be served and is the most practical manner of effecting notice of the suit.

Here, all prongs are met. The plaintiff exercised due diligence. She employed not one but two deputies to serve Mr. Tamaki. She tried to have him served through his attorney, who originally agreed to sign a waiver. She attempted to deliver service of process to both his business and his home, on multiple occasions. Through her attorney, she sent his attorney a copy of the complaint that was filed in the court, and a copy of the ECF record showing the filing.

Her attorney repeatedly followed up with his attorney, advising that the Defendant was refusing service, and that a motion for service by alternate means would be filed. The Plaintiff was advised to "do what you have to do".

The physical location of the Defendant was not only known, but it was also notorious. He owned a large business in the Old Port. He was regularly present at that business. By his own admission, he was present at that business when Deputy Rinaldi came to serve him. But somehow, he was just too busy to receive service of process, even though nothing needed to be signed, just handed off.

He was actively evading service of process, not coming to the door of his home despite cars parked in the driveway, not waiting to receive service at his business, and blaming the Deputy for getting inpatient and leaving. As

5

demonstrated by the correspondence, he was telling his attorney to sign a waiver, then "hedging" and not being in touch "for weeks"

The requested method of service was not only reasonably calculated to provide adequate notice, but it did also provide actual notice.  Mr. Tamaki was present when Deputy Adams arrived at his door with the drop service. Instead of taking it in hand, he made Deputy Adams drop it in the doorway.  Still, he received it.

Then, feigning surprise, he claimed he had no notice of this action; even though he served the Plaintiff's attorney with his own personal injury action, alleging extortion, only 4 days later.

At hearing and within his pleadings, he went to great efforts to attack the credibility of the Plaintiff, her sister, and both of her attorneys. He attacked the credibility of 91-year-old Sam Rinaldi, veteran of 41 years of civil service experience. He attacked the credibility of James Adams. He claimed that the FBI was involved in this case, and it was "sketchy." He claimed that, if Stephanie Tamaki died, Peter Rodway would get all her money.[3]

The Defendant claims to have been the victim of false allegations. However, the court admitted the trial testimony of the Defendant in the personal

---

[3] Although Mr. Tamaki denied that the FBI told him this, or that he told Kenta Tamaki this, Kenta Tamaki texted this to Stephanie Tamaki. See Exhibit 1, attached to Plaintiff's Response to the successive Rule 60(b) Motion.

injury case involving Jennifer Tamaki.  Reading his responses to what happened in the bathtub to both Jennifer and Stephanie, the court can make its own conclusions about the Defendant's credibility.  It can also take judicial notice of his efforts to influence the court through extrajudicial means.

The Defendant's frivolous allegations notwithstanding, the Plaintiff's Motion for Alternative Service was supported by due diligence, and the Magistrate Judge was justified in issuing the Order.

    C. <u>The motion to vacate judgment was a successive motion, barred by the doctrine of Res Judicata.</u>

Defendant first filed a pro se motion to vacate the default judgment. (ECF#41) This was followed, after he retained counsel, by an Amended Motion to Vacate Judgment, this one drafted by counsel, making essentially the same arguments that Defendant made in his pro se motion. (ECF#50). The motion filed by counsel was opposed by Plaintiff (ECF#51), which was followed by an Amended and Corrected Response (ECF#56) and Defendant filed a Reply (ECF#58). The Court thoroughly considered the pleadings and declarations of the parties and properly denied Defendant's Motion (ECF#59). The denial of the Motion to Vacate is presently before the Court of Appeals.[4]

---

[4] Plaintiff has filed a Motion for Summary Disposition. The pleadings for that motion were completed as of November 20, 2024, with still no action by the Court of Appeals.

7

About eight months after the first Motion to Vacate was denied, Defendant filed the present Motion pursuant to Rule 60(b), alleging, amongst other things, newly discovered evidence, fraud on the court and, and for a second time, that Defendant was not served properly (ECF#86).

The doctrine of Res Judicata, also known as "claim preclusion," provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 66 L. Ed. 2d 308, 101 S. Ct. 411 (1980). Res Judicata requires the following: (1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits. *Gonzalez v. Banco Cent. Corp.,* 27 F.3d 751, 755 (1st Cir. 1994). Res Judicata applies to successive Rule 60(b) motions. *Hughes v. McMenamon,* 379 F. Supp. 2d 75, 79 (D.Mass. 2005).

Here, in addition to asserting factual issues that had no bearing on whether the default judgment was properly entered, Defendant raised essentially the same central claim in his successive Motion to vacate that he did in his first. That being that he was not served and not aware of the lawsuit.

All the elements of Res Judicata are present. First, there was a final judgment on the merits of Defendant's first Motion to Vacate the Default

Judgment. Second, there is identicality of the parties. And third, there is identicality of the lawsuit. The principal underlying Res Judicata is that a party who once has had a chance to litigate an issue ought not to have another chance to do so. *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.,* 847 F.3d 1221, 1239 (10th Cir. 2017).

Here, Mr. Tamaki had a chance to litigate the issue of service of process, and in fact did litigate, the issue of service of process in his first Motion to Vacate. He could have raised the specific issue about the validity of the Alternative Service Order, as well as any other issue raised in his successive motion. Therefore, Res Judicata precludes the successive motion and it should be denied on that basis alone.

D. <u>The Court should impose sanctions against Defendant.</u>[5]

The Court has reserved ruling on Plaintiff's previously filed Motion for sanctions. Plaintiff asserts that, in conjunction with considering the successive

---

[5] Plaintiff asserts her entitlement to sanctions pursuant to Rule 11 as well as the Court's inherent power to impose sanctions. Another basis for the imposition of sanctions is 28 U.S.C. § 1927, which provides that:

> Any attorney or person admitted to conduct cases in any court of the United States or any Territory thereof who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

9

motion to vacate judgment, after having heard Mr. Tamaki's perjured testimony at the January 12 hearing, the Motion for Sanctions is now particularly ripe for decision.

Mr. Tamaki, in his various pleadings and declarations, has claimed as follows:

1. That he was unaware that Stephanie Tamaki filed a lawsuit against him. See ECF 50-3, paragraphs 12 & 20.

2. That his wife threw away any correspondence from Attorney Levine, including process in this case. See ACF 50-3, paragraph 18.

3. That he had never been served with process in this case.

4. That Robert Levine fabricated the allegations that Stephanie Tamaki has made against Defendant. See Motion for Sanctions.

5. That Stephanie Tamaki lied when she said that he sexually abused her.

6. That Stephanie Tamaki suffers from mental health problems.

In addition to making the above listed false allegations, Mr. Tamaki has:

1. Attempted to Orchestrate an extrajudicial meeting with this Court at a dinner party.

2. Filed frivolous Bar grievances against both of Plaintiff's attorneys.

10

3. Filed a frivolous lawsuit against Attorney Levine.

The Court now knows, based upon the January 12 hearing, that Mr. Tamaki was personally served at his residence on October 26, 2023. Therefore, Mr. Tamaki has lied, not only in his various declarations but in actual open court, under oath, to the Court about service of process. He has also lied, both in open court and in his declarations and pleadings, that he was unaware of the lawsuit by Ms. Tamaki. In addition, he has lied about Robert Levine fabricating evidence, Attorney Levine's conduct and Attorney Rodway's conduct, in the context of both Bar grievances, and Attorney Levine's conduct in the context of the lawsuit against Mr. Levine[6]. He has lied about Ms. Tamaki's mental health.

The standard for determining whether sanctions should be imposed is set forth in Rule 11(b). Rule 11 empowers a court to impose sanctions on a party or lawyer "for advocating a frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose." *CQ Int'l Co. v. Rochem Int'l, Inc., USA*, 659 F.3d 53, 60 (1st Cir. 2011). Rule 11(b) permits sanctions "only for misconduct in presenting 'a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it.'" *Balerna v. Gilberti*, 708 F.3d 319, 323 (1st Cir.

---

[6] Mr. Tamaki has made defamatory allegations about Mr. Levine on social media, which could give rise to a separate civil action against Mr. Tamaki on behalf of Mr. Levine. This is currently under consideration.

11

2013).  Rule 11(c) requires that any motion for sanctions must be (1) filed separately from any other document and describe the specific conduct allegedly violating Rule 11; (2) the motion must be served on the offending party in compliance with Federal Rule of Civil Procedure 5, and (3) it must not be filed or presented to the court if the challenged conduct is withdrawn or appropriately corrected within twenty-one days after service.

In this case, the procedural requirements of Rule 11(c)(2) have been complied with, as set forth in Plaintiff's previous Motion for Sanctions. (ECF#89).

The Court has now heard testimony that conclusively establishes that Mr. Tamaki has lied in his various declarations, and in Court, when he has claimed that he was not aware of this lawsuit. All the disparaging assertions that he has made about Ms. Tamaki and her lawyers aside, the Court now knows that the central claim in Mr. Tamaki's quest to overturn the Judgment, that he was either never served with process, or that he was improperly served, is a lie. This lie appears throughout the post-judgment pleadings signed by Mr. Tamaki's lawyers, and in the declarations signed by Mr. Tamaki himself. This lie has caused Ms. Tamaki's lawyers to spend considerable time responding to it.

The other sanctionable lie told by Mr. Tamaki in his various declarations and pleadings, is that Robert Levine manufactured the evidence of both the sexual abuse of Stephanie Tamaki and the sexual abuse of Jennifer Tamaki. These

12

allegations have been filed in the public docket of this case, for anyone to read. Mr. Tamaki's lawyers have signed pleadings that make this unfounded and egregious claim. Again, Ms. Tamaki's lawyers have been required to spend a great deal of time to respond to these spurious allegations.

In addition to the remedies provided by Rule 11, Federal Courts are vested with the inherent authority to impose sanctions for bad-faith conduct, including attorney's fees, when the party acts wantonly, vexatiously, or for oppressive reasons. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). Under Rule 11 itself, Courts may impose sanctions against a party or attorney who falsely accuses opposing counsel of misconduct. *Balerna v. Gilberti*, 281 F.R.D. 63, 70 (D. Mass. 2012) (holding that Rule 11 sanctions were warranted where counsel made false accusations against opposing counsel); *McGarry v. Geriatric Facilities of Cape Cod, Inc.*, No. 10-cv-11343-GAO, 2011 U.S. Dist. LEXIS 69184, 2011 WL 2600574, at *2 (D. Mass. June 28, 2011) ("Plaintiff's conduct in making false allegations against defense counsel and Ms. Morse is in violation of Rule 11 of the Federal Rules of Civil Procedure.") See also *Xiao Wei Catering Linkage in Inner Mong. Co., Ltd. v. Inner Mong. Xiao Wei Yang USA, Inc., 2018 US Dist.* LEXIS, at *17 (*Imposing sanctions against lawyer personally for wrongly claiming that opposing counsel falsified documents).

Here, the Defendant has acted in bad faith by falsely claiming that he was never served with process, and by falsely accusing Robert Levine of manufacturing evidence to support the claims of Stephanie and Jennifer Tamaki that Defendant incessantly sexually abused them over a period of nine years. He has also acted in bad faith by characterizing Stephanie Tamaki as mentally ill, and by accusing her

of being untruthful about the sexual abuse that she has suffered at the hands of Defendant. He has acted in bad faith by attempting to orchestrate an extrajudicial meeting with this Court. He has acted in bad faith by filing frivolous grievances against Ms. Tamaki's lawyers and by filing a frivolous lawsuit against Robert Levine.

Some of his acts of bad faith are sanctionable pursuant to Rule 11 because they are encompassed in pleadings and declarations signed by counsel and filed with the Court. Other acts of bad faith are sanctionable pursuant to the Court's inherent power to sanction and 28 U.S.C 1927. The acts of bad faith encompassed in pleadings and declarations caused Ms. Tamaki's attorneys to expend considerable time and resources to respond, including multiple pleadings in opposition to two separate motions to vacate the judgment, as well as a three-hour court hearing.

Aside from the false claims of innocence and personal attacks on Ms. Tamaki and her lawyers, the basic premise of Defendant's request that the judgment be vacated comes down to one demonstrably false assertion - that he was never served and was not aware of the lawsuit. This is what counsel for Ms. Tamaki has been required to defend against to preserve the judgment and collect the amount of the judgment, plus interest. Therefore, one proper sanction should be

15

that Defendant, and/or his lawyers, be ordered to pay Ms. Tamaki's lawyers for the work that they did in responding to Defendant's lies.

The Court has other sanctions at its disposal, however. Under both its inherent authority and Rule 11(c)(4), the Court may strike pleadings, order injunctive relief with respect to future pleadings, or impose civil monetary penalties. See Rule 11 Advisory notes. What should not be lost on the Court, in its consideration on the issue of sanctions, although it is apparently lost on Mr. Tamaki and his lawyers, is that Stephaine Tamaki has been egregiously harmed by Mr. Tamaki. She was harmed when he sexually abused her over a period of nine years, until the Department of Human Services intervened and removed her from Mr. Tamaki's care. Instead of caring for and protecting Jennifer and Stephanie, as a parent should do, he used them as his sex toys.

Worse, the false pleadings and false allegations have added insult to Stephanie's original injury. She waited almost 40 years for justice in this case. She first testified as a witness in the related case involving her late sister Jennifer Rutka. Empowered by the experience of speaking truth to power, she found the courage to bring her own lawsuit against her adoptive father. Then, encountered with his resistance to accepting service of process, she

16

went to extraordinary lengths to get him served. Having effectuated service, she waited for his response. In response, he ignored her lawsuit and started one of his own, pro se, against her attorney.

When he failed to hire a lawyer or respond to her lawsuit, she filed a motion for default. Once that was granted, she asked for a hearing on damages. Once that was granted, she flew from California to Maine to testify. She underwent a psychological evaluation and paid expert witness fees for the testimony of Dr. Elise Magnuson on her behalf.

Upon direct examination, Stephanie detailed her traumatic history of childhood abuse. She recounted in graphic detail how she had been sexually abused as a child in a bathtub and in her bedroom by her stepfather. She described how the abuse had displaced her from her home, caused her to have to leave her friends in the US and live in Japan. She described the trauma of living and working in a new country where she didn't speak the language. She described how the abuse left her with trust issues, blunted her enjoyment of life, impacted all her relationships, and left her unable to form an intimate relationship with another adult.

Having unburdened herself to the court about her childhood trauma, she received justice in the form of a $4,000,000 judgment. Then, when she

17

tried to collect the judgment, she was met with false and defamatory allegations that she and others had fabricated the details of the abuse.

As if his sexual abuse of Stephanie was not bad enough, Mr. Tamaki has continued to victimize Stephanie, with his fraudulent and vexatious attacks on her character, her credibility and her mental health. He has done this in public pleadings, as he has continued to attempt to avoid responsibility for his outrageously deviant and perverted sexual behavior involving his minor stepchildren. He has enlisted others, some of whom are Stephanie's siblings, all of whom made declarations in the context of the successive Rule 60(b) motion, to disparage and denigrate Stephanie. Meanwhile, Stephanie waits for the justice that has evaded her for over thirty years. Mr. Tamaki's continued behavior surrounding this litigation has added insult to injury and deserves severe sanctions.

Accordingly, Ms. Tamaki requests (1) that the Court allow her lawyers to submit an attorney's fees affidavit for the Court's consideration and that the Court Order Defendant and/or his lawyers to pay directly to Ms. Tamaki's lawyers their attorney's fees incurred in responding to all of the pleadings filed by Defendant, beginning with the first Motion to Vacate; (2) that the Court prohibit Defendant from filing any further motions attacking the Judgement; (3) that the Court Order Defendant to pay a civil penalty in an amount that the Court deems appropriate so as to deter him from future misconduct; and (4) that the Court Order any pleading

18

that contains derogatory assertions concerning Stephanie Tamaki be stricken from the public docket.

CONCLUSION

For the reasons set forth above, Plaintiff requests relief as follows:

1. That the Court withdraw its indicative ruling and deny Defendant's second Motion to Vacate Judgment.

2. That the Court impose sanctions against Defendant, and/or his attorneys, as follows:

   a. That Defendant shall be required to pay directly, in an amount to be determined by the Court after submission of attorney's fees affidavits, Plaintiff's attorney's fees incurred in responding to all pleadings and motion filed by Defendant, beginning with the first Motion to Vacate Judgment. (ECF#51).

   b. That Defendant shall be prohibited from filing any future pleading that challenges that Judgment, either in validity or amount.

   c. That Defendant shall pay a monetary civil penalty in an amount that the Court deems appropriate and necessary to deter future misconduct by Defendant; and

   d. That the Court Order the following pleadings stricken from the docket: ECF#41, ECF#50, ECF#58, and ECF#86.

19

Dated at Falmouth, Maine this 5th day of February, 2026.

/s/Peter E. Rodway, Esq.
peter@rodwaylaw.com
251 U.S. Route 1
Falmouth, Maine 04105
207-773-8449

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

I hereby certify that on February 5, 2026, I electronically filed Memorandum in Support of Motion for Reconsideration with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following participants:

Peter J. Cyr, Esq. (Maine Bar ID No. 9037)
peter@peterjcyrlaw.com
Law Offices of Peter J. Cyr
85 Brackett St.
Portland, ME 04102
Telephone: (207) 828-5900
Facsimile: (207) 828-5909

James Berdelle, Esq., pro hac vice (Illinois bar # 6185089)
michaelisrael@dcklawfirm.com
Demidchik Law Firm PLLC
3031 Tisch Way, Ste 300
San Jose, CA 95128
Telephone: (415) 960-3333
Facsimile: (212) 810-7257

Yunchao Song, Esq., pro hac vice (California bar #323484)
paul@dcklawfirm.com
Demidchik Law Firm PC
3031 Tisch Way, Ste 300
San Jose, CA 95128

20

Telephone: (415) 960-3333
Facsimile: (212) 810-7257

/s/Peter E. Rodway, Esq.
Rodway & Horodyski
251 U.S. Route 1, Suite W-18
Falmouth, Maine 04105
207-773-8449
rodlaw@maine.rr.com

21