UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| STEPHANIE TAMAKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  2:23-cv-00312-LEW |
| | ) | |
| | ) | |
| ATSUSHI TAMAKI, a/k/a | ) | |
| ATCHAN TAMAKI, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM AND ARGUMENT
FOLLOWING JANUARY 12, 2026 TESTIMONIAL HEARING IN SUPORT OF
VACATING THE COURT'S AMENDED JUDGMENT**

**Now Comes** Defendant Atchan Tamaki, through counsel, and for his Memorandum and arguments to the court in support of his motion to vacate the Amended Judgment and Order dated April 26, 2024 (Amended Judgment and Order, ECF #26), states as follows:

**Summary of Argument**

The Amended Judgment should be vacated for the following reasons:

First, Plaintiff's process server failed to exercise "due diligence" and exhaust all reasonable efforts to provide actual notice of the action to Defendant prior to seeking alternate service. Second, Plaintiff's Motion for Alternate Service made material "misrepresentations" to the Court regarding the actual number of service attempts and the location of service attempts made on Defendant. Third, Defendant Atchan Tamaki has given an Additional Declaration attesting under penalty of perjury that his home at 133 Rivers Edge Drive does not have a "side door" or side entrance. Fourth, the testimony of James Adams at the January 12, 2026 Hearing was not credible. Fifth, because the service of process in this case was grossly insufficient and based upon the lack of due diligence in respect to service and misrepresentations to this Court,

Page **1** of **21**

the judgment should be vacated or this Court lacked jurisdiction altogether and the judgment should be found to be void.

## Procedural History

This matter comes before the court on Defendant's Motion to Vacate Judgment dated April 22, 2025 (ECF#86).

Following Plaintiff's response and Defendant's reply, this Court issued an indicative Ruling on June 17, 2025 (ECF#90). In its ruling the Court noted: "As for the core question of whether a misrepresentation may work in Defendant's favor, the motion record suggests that the Affidavit that Plaintiff's counsel filed in support of Plaintiff's request to effectuate service by alternate means, may have misrepresented that the service agent previously attempted to serve Defendant in hand at his place of residence." The Court compared Plaintiff's Affidavit In Support of Motion for Alternative Service (ECF#5-1) with Defendant's Declaration Regarding Sheriff's Delivery Record (ECF#86-2, Page ID ## 765-786 and ECF#86-3, page 769).

Because the core question involves Plaintiff's Motion for Alternate Service, it is important to note for the timeline that the Motion for Alternate Service was filed on October 6, 2023 (ECF#5), and that the Order granting Service by Alternate Means was dated and entered on October 13, 2026 (ECF#6).

The relevant portion of Plaintiff's Affidavit in Support of Motion for Alternative Service states as follows:  "On multiple occasions, the Sheriff went to Defendant's place of business.  He encountered the Defendant personally, but the Defendant refused to receive copies of the Summons and Complaint." "On multiple occasions, the sheriff went to the Defendant's home at 133 Rivers Edge in Portland. Though a car was in the driveway, no one answered the door." (ECF#5-1 paragraphs 6 and 7).

The complete service records maintained by the Civil Process Division and deputy Rinaldi's Service Worksheet (notes) indicate that prior to the Order on Alternate Service, service was attempted one time on August 10, 2023, and one time on September 29, 2023, both at the Defendant's place of business, Hobson's Pier in Portland.  (ECF#86-2, page 766). These records and notes completely contradict the assertions made by Plaintiff in her Affidavit in Support of Alternate Service.

Lastly, the Court noted under Maine Law "Service by alternative means is authorized only on a showing that the movant exercised due diligence in attempting to effectuate personal service when the residential address of the person to be served is known. Me. R. Civ. P. 4(g)(1)." (ECF#90, page 1012).

The Court in its Indicative Order voiced concern that "Plaintiff's service agent may have cut corners when attempting personal service under Maine Rules of Civil Procedure 4." *See* id. "Depending on the circumstances, the Court might, in the interest of securing a judgment on the merits, grant relief from the Default Judgment based on a misrepresentation associated with the Motion for Service by Alternate Means." *See* id.

The Court further addressed the issue of the potential misrepresentation by Plaintiff's service agent in its Order dated November 21, 2025, denying Plaintiff's Motion to Reconsider the Court's ruling in its Indicative Ruling.  (ECF#97, pages 1115, 1116, and 1124). In the Motion to Reconsider the Court's Indicative Order (ECF#93), Plaintiff emphasizes the process server's sworn testimony at the default judgment damages hearing which indicates **three attempts** to serve process at Defendant's **home address**.  (ECF#97 at 1115). Plaintiff further argued that the civil process service worksheet presented by Defendant was uncertified and should not be considered. The Court in its Order concluded that a hearing would be justified:  "I

viewed the exhibit and the related testimony as matters that would justify cross examination of the process server so that the court could make a credibility finding" (ECF#97 at 1116). The issue being the "propriety of Plaintiff's alternative service application to the Court. . ." To this end, the Parties appeared for a testimonial hearing on January 12, 2026.

<u>**Additional Declaration Dated February 9, 2026 of Defendant Atchan Tamaki**</u>

Defendant Atchan Tamaki attaches hereto as an Exhibit, his Additional Declaration of February 9, 2026 under Penalty of Perjury, necessitated by the testimony of James Adams. In his Declaration of February 9, 2026, Defendant Atchan Tamaki attests under penalty of perjury to the following:

Defendant has taken full panoramic photographs of his home in the State of Maine as it exists on February 9, 2026 (and attached to his February 9, 2026 Declaration), that these photographs or copies of same are true, correct, and actual photographic representations of his home at 133 Rivers Edge Drive as it exists now, that the external condition and external physical and structural layout of his home has not changed over the last ten years, and that, therefore, the attached photographs are true, correct, and actual photographic representations of his home at 133 Rivers Edge Drive as it existed over the last ten years to the present time, and, furthermore, that his home at 133 Rivers Edge Drive has never had a "side door."

**The January 12, 2026 Testimonial Hearing and Defendant's Argument That, In the Context of the Motion for Alternate Service, Plaintiff made Material Misrepresentations To This Court and Failed to Exercise Due Diligence In Service Prior to the Motion for Alternate Service, and the Testimony of Deputy James Adams Is Not Credible**

Based on the direction provided by the Court's in it's Indicative Ruling and Order and the testimony and exhibits admitted in evidence during the January 12, 2026 testimonial hearing, Defendant argues as follows:

**Based on the Civil Process records and Rinaldi's Civil Process Worksheet (notes), Plaintiff's Affidavit in Support of Alternate Service misrepresented the number of times service was attempted and the location where service was attempted.** The complete Civil Process Service records maintained by the Civil Division and the Civil Process Worksheet prepared by deputy Rinaldi show only two attempts at service of Defendant prior to the Motion for Alternate Service-- **one time on August 10, 2023 and one time on September 29, 2023**, **both at the Defendant's place of business, Hobson's Pier in Portland**.  (ECF#86-2, page 766). The records do not indicate any service was attempted at Defendant's home address residence at 133 Rivers Edge Drive prior to Plaintiff's Motion for Alternate Service. *See* Defendant's January 12, 2026 Hearing (hereinafter, "Hearing") Exhibits 2 and 2a respectively.

The Civil Process records maintained by the Civil Process Division and the Civil Process Worksheet prepared by deputy Rinaldi, contemporaneously with his work on this case, should be exclusively relied upon to determine when and where service was attempted, as opposed to the failed memories of deputies Adams and Rinaldi. Both deputy Rinaldi and deputy Adams admitted on the stand that they require the Civil Process Table and Civil Process Worksheet to refresh their memories regarding the details surrounding their work in this case. *See* infra. **Importantly, Deputy Adams took no notes and made no records pertaining to his involvement in this matter**. *See* Infra. Deputy Rinaldi filled out the Civil Process Worksheet. Deputy Rinaldi testified that he could not remember details without referring to the records or his notes. *See* infra. Deputy Rinaldi testified that he writes down notes of every attempt at service on the Civil Process Worksheet, Defendant's exhibit 2a. *See* infra. **Deputy Rinaldi testified that if its not written down in his notes, he didn't go**.

Defendant's Hearing Exhibit 9 consists of the "entirety of the materials possessed by the Cumberland County Sheriff's Office in regards to Atsushi Tamaki and the case:  Stephanie Tamaki v. Atsushi Tamaki a/k/a Atchan Tamaki."  *See* Defendant's Hearing Exhibit 9, admitted in evidence by agreement. *See* January 12, 2026 Hearing Transcript (hereinafter "Transcript" or "Tr.") at 66. An excerpt of the relevant parts of Defendant's Exhibit 9 was admitted in evidence as Defendant's Exhibit 2. Tr. at 117. Defendant's Exhibit 2 consists of all documents relating to Process Number 23-002833. Page 2 of Defendant's Exhibit 2 shows two attempts at service of the Defendant at Hobson's Pier. One attempt was made at 2:00p.m. on August 10, 2023, at Hobson's Pier and the second attempt was made at 4:15p.m. on September 29, 2023 at Hobson's Pier. *See* id.

The Affidavit in Support of Alternate Service containing Plaintiff's assertion that multiple attempts were made at both Hobson's Pier and Defendant's River's Edge Road residence is dated October 6, 2023. (ECF#5) Based on the written records and notes, Plaintiff's Affidavit in Support of Alternative Service **misrepresented the service efforts to the Court** and **misrepresented to the Court that Plaintiff had exercised "due diligence" in respect of service**.

On cross examination, Plaintiff's witness Deputy James Adams admitted that the official service records maintained by the sheriff's department indicate two service attempts by officer Rinaldi, prior to the Affidavit in Support of Alternate Service, **both at Hobson's Pier**.  *See* Tr. at 26-27.

> Q.  Okay, all right, So just by looking at – just by looking at this first page of Plaintiff's exhibit 2, you would understand that to be that Sam went to Hobson's Pier on three separate occasions, once on August 10th, once on September 29th, and once on October 26th, correct?  A.  Correct.  Q.  And so this – this particular

document would not have refreshed your recollection as to your involvement would it have?  A.  Not necessarily.[1]

When asked the specific year when he, personally, was involved in this matter, Deputy Adams conceded he would have to refer to the worksheet.  See Tr. at 21.  "Q.  Is it fair to say?  Is that one of the reasons that you keep records, in order to – to jog your memory when – when things of this nature come up?  A.  Correct."  See Tr. at 22.  In fact, the last time deputy Adams had anything to do with this matter was October 26, 2023.  *See* Tr. at 23.

Deputy Adams admitted that he met with Plaintiff's counsel about a week prior to the January 2026 hearing for about one hour.  *See* Tr. at 24.  Notwithstanding that meeting, at the actual January 2026 hearing **only one week later after his discussion with counsel**, Deputy Adams **could not recall** the year of his purported involvement on the Tamaki matter.

**Approximately 2 years and three months passed between Deputy Adams purported last involvement with this matter and his meeting with Plaintiff's counsel in January of this year**.  In the meantime, Deputy Adams testified that he has been working full time in the Civil Process Division.  Tr. at 18.  On any given day he serves 10 to 15 people each day.  *See* id.  **Importantly, Deputy Adams testified that he did not fill out any paperwork associated with this case**.  See Tr. at 18-19.

**As for Deputy Sam Rinaldi, he too conceded that he must rely on the records for recalling any specifics relating to the service of Defendant in this matter**.  Deputy Rinaldi testified on direct examination that he went to Hobson's Pier "many times" prior to the motion for alternate service.  *See* Tr. at 86.  However, when pressed on cross examination, Deputy Rinaldi admitted he **could not recall** specifics without reviewing either the civil process Table or

---

[1] The first page of Plaintiff's exhibit 2 is the same as the second page of Defendant's exhibit 2.

Civil Process Service Worksheet.  *See* Tr. at 116.

Deputy Rinaldi was asked on direct examination whether he went to Defendant's residence more than once prior to the order on alternate service.  *See* Tr. at 85-86.  He answered as follows: "I – yes, I must – I would have to in order to get an alternative service."  Tr. at 86.  However, again when pressed on cross examination, Deputy Rinaldi could not provide any specifics and admitted he was relying on the Civil Process Table and Worksheet for any specific details relating to the service of Defendant.  *See* Tr. at 104-105.

> Q.  Let me ask you this Mr. Rinaldi.  Is the information that you put here on Defendant's exhibit 2a consistent with the information on page 2 of Defendant's exhibit 2?  In other words, the date that you attempted service, the place, and the person.  A.  Yes, it shows where – here right here, Hobson's point, 390 Commercial Street located Portland.

Tr.  at 102;  *see also* Defendant's exhibit 2 and 2a.[2]

> Q.  All right.  Let me ask you this.  Without looking at the documents, would you be able to tell me the first attempt you made to serve Mr. Tamaki, without looking at the documents?  A.  No, because there's so many papers that I served there, or attempted service I should say.

Tr. at 104-105.

> Q.  And so – well, let me ask you this.  If – you – do you have to rely on your record to refresh your memory as to when you went or – to serve Mr. Tamaki, is that fair?  A.  Yes, but it says so right there.

Tr.  105.

> Q.  Okay, all right.  So you – according to your records and according to your memory, you – you went to Hobson's Wharf to serve Mr. Tamaki on 08/10/2023 at around 1400 hours.  A.  Yes.

Tr.  at 106.

> Q.  Okay.  All right.  Now, on 09/29/2023 this record indicates that you went to serve Mr. Tamaki at the same address as above, which is Hobson's Wharf at

---

[2] Deputy Rinaldi testified regarding the procedure for how information is taken from his notes, Defendant's Exhibit 2a to create page 2 of Defendant's Exhibit 2.

around 1615 hours, correct?  A. Yes.

Tr. at 107.

> Q.  I'm going to ask this question.  Prior to October 13th of 2023, can you tell me the number of times that you tried or attempted service on Mr. Tamaki prior to October 13th of 2023?  A. That far back no.  Could you tell me what you was doing on that one particular date?

Tr.  115.

> Q.  All I'm asking you to do, sir, all I'm asking you to do is to review your own notes and tell me how many times you attempted service of Mr. Tamaki before October of 2023.  Can you do that?  A.  No.

Tr. at 116.

Deputy Rinaldi testified that he documents/notes each attempt at service on the Civil

Process Worksheet, Defendant's Exhibit 2a.

> Q.  Okay.  And – when you have this sheet[3] you're putting down all of your attempts, your writing that down, correct?  A.  I list them like you see here.

Tr.  at 101.

> Q.  All right.  That's what I'm trying to get to here.  When you – when you make your – your notes, are you noting every time that you're making a trip to go and serve someone?  A.  Yes, if I've gone there, yes, that's what this[4] is for here.

Tr. at 106.

> Q. Okay.  Is that fair to say that there's not occasions where you went to his – that you went to Hobson's Wharf and you didn't write it down?  A.  No, it could be a reference that I was on vacation that meantime.

Tr.  107.

On redirect examination by Plaintiff's counsel, Deputy Rinaldi admitted that he

documents every attempt of service that he makes:

---

[3] "this sheet" is referring to Defendant's Exhibit 2a, deputy Rinaldi's notes contained on the Civil Process Worksheet.  See Tr. at 100-101.

[4] Deputy Rinaldi is again referring to the Civil Process Worksheet, Defendant's Exhibit 2a.

Q. I understand.  Did – did you document every attempt of service that you tried to make?  A. I usually do.  Q. Usually or there's sometimes you don't.  A. No – yes, I do, it shows it there.

Tr. at 120.

Q. Do you have a memory after August 10th of 2023, of serving or attempting to serve Mr. Tamaki with the paperwork again?  A. I don't recall   Q. Okay. I'm going to hand you what I've marked as Defendant's exhibit 2a.  Would this document help you reestablish or – recall your memory as to the next time that you might have attempted service of Mr. Tamaki?  A. Your saying after August 10th?  Q. Correct.  A. It's listed here as September the 29th and October the 26th.

Tr. at 109.

Deputy Rinaldi did not have an independent memory of when and where he attempted to serve Defendant prior to Plaintiff's Motion for Alternate Service. Deputy Rinaldi testified on both cross and redirect that he noted every time he made a service attempt on Defendant. Based on the above, the only reliable and credible evidence to show the times and places when service was attempted prior to Plaintiff's Motion for Alternate Service is the Civil Process records and the Civil Process Worksheet. Those records show only two attempts:  both at  Hobson's Pier;  the first on August 10, 2023, and the second on September 29, 2023.

Plaintiff's Affidavit in seeking the Motion for Alternate Service (ECF#5), stating service was attempted "multiple times" at Defendant's business and "multiple times" at Defendant's residence were material **misrepresentations to the Court**. The Amended Judgment should thus be vacated.

The sworn testimony of Deputy Adams and Deputy Rinaldi of the drop service on October 26, 2023, which allegedly occurred, if at all, *after* the Motion for Alternate Service (ECF#6) was granted, is far from reliable and not credible. During the damages hearing on March 28th, 2024, Deputy Rinaldi testified regarding his service attempts on Defendant. As in the January 12th hearing, Deputy Rinaldi stated without specific details, that he "made numerous

efforts to make contact with the individual". *See* March 28th, 2024, Damages Hearing Transcript (DTr.) at 5-6. During his testimony, Deputy Rinaldi gave specifics regarding the drop service of October 26, 2023. Deputy Rinaldi testified as follows: "The final paper that I got from you to serve on him I had to make what we call a drop service. It was in his office because once he spotted me he took off down the hallway. . ." DTr. At 6. Based on the above testimony, it is clear that during the drop service at the office on October 26th, Rinaldi testified that the Defendant was present: "once he spotted me" refers to the Defendant. *See* id.

> Q. And then when we got permission from the court to do this drop service, you went to his office; is that correct? A. Yes. Q. With the paperwork, with the order for service by alternate means; is that right? A. Correct. Q. And when you arrived at his office did you recognize him? A. Yes, because he was coming up the corridor from his other office up to the main office, and as soon as he see me he turned around and took right off at his office. So I had to make what we call a drop service on the counter.

DTr. at 7-8.

Deputy Rinaldi went on to testify, without any specifics, that he made three efforts to serve Defendant at his residence, 133 Rivers Edge Drive without success. DTr. at 8-9. "Q. Okay. And did you also do drop service at his home? A. Yes." DTr. at 9. The testimony of Deputy Rinaldi at the Damages Hearing that he made three efforts to serve Defendant at his home in addition to one 4th time which constituted the drop service, are completely contradicted by the written records of the Civil Division and Rinaldi's own contemporaneous notes.

> For his part, at the January 12, 2026 Hearing, Deputy Adams testified as follows:

> Q. And so the first time that you went to 133 River's Edge with Sam in your car to perform service, do you recall whether it was daytime or nighttime? A. Daytime. Q. And do you recall if anyone was there? A. There was a vehicle or two in the yard. Q. All right. Did anyone answer the door? A. No. Q. Did you knock on the door? A. I knocked on both doors, **front and side door**. Q. And did it appear that anyone was there? A. I couldn't tell other than the fact of the vehicles there, which normally indicates somebody's home. Q. And did you leave any

paperwork with – there on that occasion?  A. No.  Q. Why not?  A. Because nobody came to the door.

Tr. at 7-8.

And Deputy Adams gave testimony at the January 12 hearing regarding the purported drop service at the home on October 26, 2023. Deputy Adams testified that "The second time we went there there was a court order to leave paperwork." Tr. at 8. He testified that he was driving the car and that Deputy Rinaldi did not get out of the car because he was injured. *See* Tr. at 8. "A. I knocked on **both doors**. I knocked on the front door last. Finally someone came to the door. I **believe** it was Mr. Tamaki." Tr. at 9.

In the morning of October 26th, Deputy Rinaldi did not get out of the car to attempt the drop service because, as Deputy Adams put it, Deputy Rinaldi **was injured**. However, 35 minutes later, Deputy Rinaldi had no problem getting out of his own car to quite physically complete the drop service at Hobson's Pier without Deputy Adams. *See* DTr at 6-8. These discrepancies show how memory cannot be trusted or relied upon given the nature of a civil process servers job. According to Deputy Adams, he is serving 10 to 15 people per day. That means he served thousands of people at different addresses in between the time he purportedly served Defendant and the January 12th hearing date. **It may very well be true that deputy Adams had a door shut in his face by an individual he was trying to serve, however, without contemporaneous notes or other reliable records, there is no way to connect his experience of having the door shut in his face with this particular defendant**. It is obviously easy to identify the Defendant when he is the only one sitting next to counsel in the court room.

Q.  I am asking you whether you can identify the individual sitting next to Peter Cyr.  A. Yes.  Q. Who – is that the same individual that answered the door?  A. Correct.

Tr. at 9. This identification is very suggestive and should be given little if no evidentiary weight.

Page **12** of **21**

A critically important fact that throws a wrench at Plaintiff's house of cards is that **Defendant does not have a side door at his home**. *See* attached Declaration of Defendant Mr. Tamaki along with pictures of his house to demonstrate that he has no side door and has never had a side door. This lends more credence to the fact that Deputy Adams is thinking about a **different experience** that his memory is melding into the case at bar and that Deputy Adams testimony in this case is not credible.

The court should rely on the civil division written records and the contemporaneous notes produced by deputy Rinaldi in determining when and where service was attempted. Doing so, leads one to conclude that there were only two attempts at service prior to the Motion for Alternate Service: one attempt on August 10th at Hobson's Pier and the second attempt on September 29th at Hobson's Pier.

In the alternative, if the court is to believe Deputy Adams that he assisted deputy Rinaldi on September 29th to attempt service at Defendant's residence, there are still only two attempts made at service prior to the Motion for Alternate Service, once on August 10th (deputy Rinaldi did not wait for Defendant to get off his forklift to complete service) and once at the Defendant's residence on September 29th (No contact with Defendant and Deputy Adams did not leave any paperwork).

A. <u>Due Diligence Has Not Been Shown Here And Default Judgment Should Be Vacated.</u>

**Due diligence in federal court requires more fulsome attempts at service than what Plaintiff has established here**.

Under FRCP Rule 4(e), service is made upon an individual in a judicial district of the United States by doing any of the following, none of which was shown here:

> delivering a copy of the summons and of the complaint to the individual personally; leaving a copy of each at the individual's dwelling or usual place of

abode with someone of suitable age and discretion who resides there; or delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Alternatively, under FRCP Rule 4(e), an individual may be served by:

"following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."

Maine Rules of Civil Procedure 4(g)(1) states in pertinent part:

(g) Service by Alternate Means; Motion Required.  (1) When Service May Be Made. The court, **on motion upon a showing that service cannot with due diligence be made by another prescribed method**, shall order service (i) to be made by leaving a copy of the order authorizing service by alternate means, the summons, complaint, and notice regarding Electronic Service at the defendant's dwelling house or usual place of abode; or (ii) by publication unless a statute provides another method of notice; or (iii) to be made electronically or by any other means not prohibited by law.  Any such motion shall be supported by (i) a draft, proposed order to provide the requested service by alternate means, and (ii) an affidavit showing that: (A) The moving party has demonstrated due diligence in attempting to obtain personal service of process in a manner otherwise prescribed by Rule 4 or by applicable statute;  (B) The identity and/or physical location of the person to be served cannot reasonably be ascertained, or is ascertainable but it appears the person is evading process; and (C) The requested method and manner of service is reasonably calculated to provide actual notice of the pendency of the action to the party to be served and is the most practical manner of effecting notice of the suit.

M.R.Civ.P. 4(g)(1).

The Constitution does not require any particular means of service of process, only that the method selected be reasonably calculated to provide actual notice and an opportunity to respond. *Lewien v. Cohen*, 432 A.2d 800, 804-05 (Me. 1981) (citing, *inter alia*, *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). Service of process serves the dual purposes of giving adequate notice of the pendency of an action, and providing the court with personal jurisdiction over the party properly served. *Gaeth v. Deacon*, 2009 ME 9, ¶ 20, 964 A.2d 621, 626,  964 A.2d at 626 (citing *Brown v. Thaler*, 2005 ME 75, ¶ 10, 880 A.2d 1113, 1116). "Any

judgment by a court lacking personal jurisdiction over a party is void." *Brown,* 2005 ME 75, ¶ 10, 880 A.2d at 1116 (citing *Lewien,* 432 A.2d at 805).

The allowable means for serving process are governed primarily by court rule. 14 M.R.S. § 701.

> Once the party seeking the order for publication or service by alternate means has shown, through affidavit, that he or she has **demonstrated due diligence and exhausted all reasonable efforts to provide actual notice of the action to the party to be served**, the court must still fashion an order which is reasonably calculated to provide actual notice of the pending proceeding.

M.R.Civ.P. 4(g)(1) Comments (emphasis added) (2025).

Maine Rules of Civil Procedure do not specifically set forth a number of service attempts that constitutes "due diligence" or the number of attempts that would satisfy the requirement that the Party exhaust "all reasonable efforts to provide actual notice of the action to the party to be served". See Comments M.R.Civ.P. 4(g)(1). However, there is a practical standard and industry standard that requires **three good fair attempts at service**. *See* Maine Process Servers: https://constablecourtservices.com/return-policy/; *see also* https://undisputedlegal.com/maine-process-service/

Deputy Rinaldi's testimony would suggest that **he too agreed that three attempts was standard and required by statute**: "But I think the statute states as long as I make three attempts I don't have to – have to have a writ of". *See* Tr. at 114.

**The federal courts delineate the due diligence in service required before service by alternate means is allowed, but due diligence has not been shown by Plaintiff Stephanie Tamaki here**.

In the context of Federal Rule of Civil Procedure 4, which governs service of process for summons, **Colorado courts have found that due diligence is not satisfied by attempts at a**

**single address**. *See Elide Fire USA, LLC v. Auto Fire Guard, LLC*, No. 21-cv-00943-NYW, 2021 WL 4947287, at *4 (D. Colo. Sept. 14, 2021) ("Although service was apparently attempted multiple times at this address, this is nevertheless insufficient to demonstrate due diligence [when] **[i]t does not appear that Plaintiff has attempted to serve [the defendant] at any other address**"); *Allstate Ins. Co. v. Cruz*, No. 20-cv-03139-DDD-MEH, 2020 WL 7421389, at *2 (D. Colo. Nov. 18, 2020) ("Allstate's apparent attempts to serve Mr. Cruz **at only one residential address also do not warrant the somewhat extraordinary measure of allowing [alternate] service.**"); *Joint Liquidators of Three Arrows Cap., Ltd. v. Tackett*, No. CV 24-MC-00121-CNS-STV, 2025 WL 487182, at *3–4 (D. Colo. Feb. 13, 2025) ("Because Petitioner has failed to show more extensive due diligence in locating and serving Mr. Tackett, the Court cannot find that substitute service in this matter is appropriate."); *Harper v. Biolife Energy Sys., Inc.*, No. 118CV02868DDDSKC, 2020 WL 2770845, at *1–3 (D. Colo. May 12, 2020), report and recommendation adopted, No. 118CV02868DDDSKC, 2020 WL 2771797 (D. Colo. May 28, 2020) ("**Plaintiff settled for ineffectual mailings and a mere two attempts at the same business address. This exhibits a lack of due diligence**; the request for substituted service is DENIED.").

In contrast, in Colorado, courts generally find that **the due diligence requirement is satisfied when a party has made multiple attempts at service at multiple addresses**. *See, e.g., BMO Harris Bank N.A. v. Marjanovic*, No. 19-cv-02945-CMA-KMT, 2020 WL 4705294, at *1 (D. Colo. Aug. 13, 2020) (plaintiff employed due diligence by attempting service at four different addresses); *Malone v. Highway Star Logistics, Inc.*, No. 08-cv-01534-RPM-KLM, 2009 WL 2139857, at *2 (D. Colo. July 13, 2009) (due diligence satisfied where personal service was attempted at five different addresses).

**New York courts** provide that where in-person service on a defendant or the defendant's agent or cohabitant "cannot be made with due diligence," service may be effected by: [A]ffixing the summons to the door of either the ... dwelling place or usual place of abode within the state of the person to be served and by ... mailing the summons to such person at his or her last known residence ... in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served....N.Y. C.P.L.R. § 308(4). This process is known as "nail-and-mail" service. *See Gardner v. Lefkowitz*, 737 F. App'x 597, 598 (2d Cir. 2018) (summary order).

To determine whether due diligence has been exercised prior to engaging in "nail-and-mail" service, **New York courts have not prescribed a rigid rule, but consider the general quality of efforts made to effect in-person service**. *See Kopec v. GMG Const. Corp.*, No. 09-CV-2187 (KAM) (ALC), 2011 WL 2650597, at *2 (E.D.N.Y. July 6, 2011). Nevertheless, certain "rough standard[s]" can be discerned from the case law, **including a requirement of at least three attempts at in-person service, preferably on non-consecutive days and during non-business hours**. *Weifang Xinli Plastic Products v. JBM Trading Inc.*, No. 1:11-CV-2710 (WFK) (LB), 2014 WL 4244258, at *3 (E.D.N.Y. Aug. 26, 2014); *see also S.E.C. v. Reynolds*, 112 F.3d 505, at *2 (2d Cir. Oct.18, 1996) ("The three attempts made in this case, including two during non-business hours, satisfy the due diligence requirement.").

In *MJC Supply, LLC v. Powis*, No. 18CV1539PKCRER, 2019 WL 1429625, at *4–5 (E.D.N.Y. Mar. 29, 2019), the Magistrate **vacated a default judgment** finding that Plaintiff had **only made two documented attempts to effect in-person service of process**. The District Court held that the Magistrate's finding that Plaintiff failed to properly serve Defendant was not

Page **17** of **21**

clearly erroneous, that "**[a] court may not properly enter a default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, 'which also means that he must have been effectively served with process**'" (quoting *Copelco Capital. Inc. v. Gen. Counsel of Bol.*, 940 F. Supp. 93, 94 (S.D.N.Y. 1996)), and that **in the absence of proper service, the Court lacks personal jurisdiction over Defendant**. *Id.*, citing *S. Bay Sailing Ctr., Inc. v. Standard Fire Ins. Co.*, No. 15-CV-6183 (JMA) (SIL), 2017 WL 913625, at *6 (E.D.N.Y. Jan. 17, 2017), adopted by 2017 WL 912042 (E.D.N.Y. Mar. 7, 2017); *see also J & J Sports Prods., Inc. v. Morocho*, No. 18CV2303AMDRML, 2019 WL 1339198, at *3–4 (E.D.N.Y. Feb. 27, 2019), report and recommendation adopted, No. 18CV2303AMDRML, 2019 WL 1333245 (E.D.N.Y. Mar. 25, 2019) (Because plaintiff did not provide sufficient evidence that process server exercised "due diligence" prior to resorting to nail and mail service, service was procedurally improper, and, thus, the court lacked personal jurisdiction over Morocho and could not hold him liable). Indeed, the Court of Appeals for the Second Circuit has held that although there are "no rigid rules" in this context, case law indicates that "**more than two attempts, including some that are during non-business hours, constitutes due diligence**." *SEC v. Reynolds*, 1996 WL 599797, 1996 U.S.App. LEXIS 27423 (2d Cir.1996).

In **Florida courts**, according to *Baker v. Joseph*, 938 F. Supp. 2d 1265, 1266–69 (S.D. Fla. 2013), Defendant demonstrated amply that service was insufficient and Plaintiffs have submitted no proof of their claims to the contrary; accordingly, the motion to vacate default and default judgment was granted.

B.  Plaintiff's Misrepresentations to the Court Warrant Vacating of Default Judgment.

**Misrepresentations to the Court of the kind here warrant vacating of the default judgment**. Setting aside a judgment on account of fraud, misrepresentation, or other misconduct

does not require that material withheld be sufficient to alter trial court's judgment. *Square Const. Co. v. Washington Metropolitan Area Transit Authority*, C.A.4 (Va.) 1981, 657 F.2d 68. Relief under Rule 60 is not dependent upon a showing of deliberate falsehood in regard to misrepresentation. *Bros, Inc. v. W. E. Grace Manufacturing Company*, 351 F.2d 208 (5th Cir. 1965); *In re Halladay Enters., Inc.*, 5 B.R. 83, 86 (Bankr. S.D. Tex. 1980); *In re Aztec Supply Corp.*, 399 B.R. 480, 491–92 (Bankr. N.D. Ill. 2009) ("[Rule] 60(b)(3) [Fed.R.Civ.P.] applies to both intentional and unintentional misrepresentations." The bankruptcy judges in this district are each assigned many thousands of cases each year. They are entitled to rely on the parties to alert them to any unusual requests for relief, especially where the parties want the judge to dispose summarily. Judge Squires is an experienced jurist, and he never would have entered the November 6th Order had he been fully informed of the lack of notice thereof or consent thereto. He was indeed misled.); *Franzblau v. Trans Glob. Commc'ns, Inc.*, No. 83 CIV. 0409 (RWS), 1984 WL 145, at *1–3 (S.D.N.Y. Apr. 12, 1984) (**motion to vacate default judgment granted** based upon Franzblau's **misrepresentation to the Court regarding personal jurisdiction**); *A&A Assets LLC v. Diamond Rose Shears LLC*, No. 1:14-CV-02037-CC, 2016 WL 3128517, at *1 (N.D. Ga. Feb. 23, 2016) (**default judgment set aside under FRCP Rule 60(b)(3) due to Plaintiff's misrepresentations to the Court regarding forum selection clause and arbitration clause**); *Offshore Marine, L.L.C. v. Fish Offshore, L.L.C.*, No. CIV.A. 11-2339, 2013 WL 3777038, at *1–6 (E.D. La. July 18, 2013) (It does not escape the Court's attention that Plaintiff has not responded to the allegations of fraud and misrepresentation asserted by Defendant; rather, Plaintiff emphasizes that Defendant was in fact served and produces the proof of service and correspondence to establish this point. However, Rule 60(b)(3) requires the Court to determine if the default judgment was obtained through fraud, misrepresentation or other

misconduct, and Plaintiff presents no evidence or argument to dispute Defendant's assertions.);

*Benitez v. MASCO Contractors Inc.*, No. 1:21-CV-0259-CCB, 2022 WL 1451892, at *1–3 (D.

Md. May 9, 2022) (Plaintiff's misrepresentation of his employment status warranted setting aside

of default judgment under FRCP Rule 60(b)(3)).[56]

       **Wherefore,** Defendant prays that this Honorable Court grants his Motion to Vacate this

Court's Amended Judgment to allow this matter to be resolved on the merits.

DATED: February 9, 2026

                     Respectfully submitted,

                     /s/ Peter J. Cyr

                     Peter J. Cyr, Esq.

                     /s/ James J. Berdelle

                     James J. Berdelle, Esq. (*pro hac vice*)

Attorneys for Defendant:
Atsushi Tamaki aka Atchan Tamaki

---

[5] Plaintiff asserts res judicata in her brief based upon "successive 60(b) motions." But in the context of Rule 60(b), res judicata only applies to 60(b) motions brought in a later suit in a separate, independent action. *See Cinquini v. Donohoe*, No. C 95-4168 FMS, 1996 WL 79822, at *7 (N.D. Cal. Feb. 8, 1996); *Locklin v. Switzer Bros., Inc.,* 335 F.2d 331 (7th Cir. 1964), *cert. denied,* 379 U.S. 962 (1965) (Rule 60(b) motion has preclusive effect on subsequent independent Rule 60(b) action); *Hughes v. McMenamon,* 379 F.Supp.2d 75, 79 (D.Mass.2005) (plaintiff sued the defendant's attorney for actions taken on behalf of the defendant in a prior, related litigation against the plaintiff); *Steele v. Bongiovi*, 784 F. Supp. 2d 94, 94–99 (D. Mass. 2011) (res judicata applied to dispose of *Steele II* based on final judgment in Steele I); *see also Lundborg v. Phoenix Leasing, Inc.*, 91 F.3d 265, 272–73 (1st Cir. 1996).

By contrast, "[r]es judicata does not preclude a litigant from making a direct attack under Rule 60(b) upon the judgment before the court which rendered it." *Watts v. Pinckney,* 752 F.2d 406, 410 (9th Cir. 1985); *see also In re Intermagnetics Am., Inc.,* 926 F.2d 912, 917 (9th Cir. 1991) (Rule 60 action not precluded by judgment being attacked).

[6] Plaintiff also improperly argued and briefed, again, her motion for sanctions but that was not the purpose of this briefing. Defendant relies on its previous brief with respect to that motion.

Peter J. Cyr, Esq. (Maine Bar ID No. 9037)
www.attorneypeterjcyr.com
Law Offices of Peter J. Cyr
85 Brackett St.
Portland, ME 04102
Telephone: (207) 828-5900
Facsimile: (207) 828-5909

James J. Berdelle, Esq., *pro hac vice* (Illinois bar #6185089)
james@dcklawfirm.com
Demidchik Law Firm PLLC
3031 Tisch Way, Ste 300
San Jose, CA 95128
Telephone: (415) 960-3333
Facsimile: (212) 810-7257

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that, on this date, the foregoing was filed

via ECF on February 9, 2026, which will serve all parties and all counsel of record via Electronic

Mail this 9th day of February 2026.

/s/ Peter J. Cyr_____
Peter J. Cyr (9037)
peter@peterjcyrlaw.com