UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| STEPHANIE TAMAKI, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-00312-LEW |
| | ) | |
| ATSUSHI TAMAKI a/k/a ATCHAN TAMAKI, | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

**SUPPLEMENTAL INDICATIVE RULING AND ORDER ON
<u>MOTION FOR SANCTIONS</u>**

This matter is currently under appeal, effectively depriving this Court of jurisdiction over Defendant's Motion for Relief from Judgment (ECF No. 86) filed on April 22, 2025, seeking Rule 60(b) relief based on lack of service, newly discovered evidence and/or a fraud or misrepresentation by Plaintiff.  In a prior Indicative Ruling dated June 17, 2025 (ECF No. 90), I indicated that I would hold a hearing to weigh testimony concerning the rigor of efforts to serve Defendant before Plaintiff filed a motion and received authorization to perform service by alternate means.[1]  Although I did not conduct an immediate hearing due to the pendency of the appeal, on November 21, 2025, I granted Plaintiff's Motion for Hearing.  Order at 10-12 (ECF No. 97).  The matter proceeded to a testimonial hearing on January 12, 2026.  Following the hearing, the parties provided the Court with closing

---

[1] *See* Plaintiff's Motion for Alternate Service (ECF No. 5); Order on Motion for Service by Alternate Means (ECF No. 6).  See also Order on Pl.'s Mot. for Reconsideration at 2-3 (ECF No. 97).

arguments, both orally and in writing.  The matter is now under advisement.  Additionally, I previously reserved judgment on Plaintiff's Motion for Sanctions (ECF No. 89).  See Nov. 21, 2025 Order at 10 (ECF No. 97).

For reasons that follow, Defendant's Motion for Relief from Judgment would be granted but for the pendency of the appeal.   Additionally, Plaintiff's Motion for Sanctions is now denied.

## BACKGROUND

In this action, Plaintiff Stephanie Tamaki sues her childhood stepfather, Defendant Atchan Tamaki, alleging that he sexually assaulted her when she was a minor in his household.[2]  On October 13, 2023, United States Magistrate Judge John Nivison granted Plaintiff's Motion for Service by Alternate Means, finding, based on one-sided evidence, that:

> Plaintiff has made multiple efforts to serve Defendant in hand with the complaint and summons through a local sheriff, but Defendant has either refused to receive the documents or has failed to respond to attempts to contact him at his home.  The record establishes that (a) Defendant resides and works in Cumberland County, (b) Defendant has avoided service, (c) Plaintiff has demonstrated due diligence in her efforts to serve Defendant, and (d) service by alternate means would provide Defendant with the necessary notice of Plaintiff's cause of action.

See ECF No. 6 at 2-3.

On October 26, 2023, Plaintiff's process server, Sam Rinaldi, left a copy of the complaint, a summons, and the Order on Motion for Service at Defendant's home address

---

[2] Because Plaintiff and Defendant share the same last name, and because Defendant appeared as a witness at the most recent hearing, to avoid confusion I will hereafter refer to Defendant by his last name and will continue to refer to Plaintiff as Plaintiff.

and at Defendant's work address (so called "drop service").  Aff. of Service (ECF No. 8).  Plaintiff's counsel also advised the Court that he mailed a copy of the documents to both addresses.  *Id.*

In support of the Motion for Alternate Service, Plaintiff provided an affidavit in which it was asserted that the sheriff "[o]n multiple occasions" attempted service at Defendant's home and that on all occasions a car was in the driveway but nobody answered the door.  Aff. in Supp. of Mot. for Alternate Service ¶ 7 (ECF No. 5-1 & Pl.'s Hr'g Ex. 5).  The affidavit also disclosed that service attempts at Defendant's place of business included an encounter with Defendant during which Defendant refused to accept service.  *Id.* ¶ 6.  According to the affiant, Attorney Robert Levine, an attempt was also made to obtain a waiver of service through counsel, but counsel (who represented Defendant in an earlier, related matter) reported that he was not authorized to sign a waiver of service or had not heard back from Defendant on the subject.  *Id.* ¶¶ 2-4.

Despite the service by alternate means, Defendant did not appear and answer the complaint.  On November 21, 2023, Plaintiff moved for entry of default, which was granted the same day.  *See* ECF Nos. 11, 12.  On December 6, 2023, the Court granted Plaintiff's motion for attachment in the amount of $2,000,000.00.  *See* ECF No. 13.  There is no indication in the record that Plaintiff did anything with the Order of Attachment and Attachment on Trustee Process at that time.

On December 28, Plaintiff filed a motion for default judgment, which the Court heard on March 28, 2024.  *See* ECF Nos. 15, 20.  At the default judgment damages hearing, Plaintiff appeared and testified concerning the nature and extent of the harms she suffered

as a result of the alleged childhood abuse.  Her allegations of abuse were accepted as true by virtue of the default.  Also appearing at the hearing was process server Sam Rinaldi. Mr. Rinaldi testified that before he made the alternate "drop service" authorized by the Court he made "three efforts" to serve Defendant at his home.  Dmg. Hr'g Tr. at 9 (ECF No. 68).  Concerning the drop service at Defendant's workplace, Rinaldi testified that he entered the establishment and saw Defendant coming toward him down the hallway. However, according to Mr. Rinaldi, Defendant "turned around and took right off."  *Id.* at 7.  Rinaldi left the drop service documents on the counter, but a female employee (Haiying Yang) picked them up and followed Rinaldi out of the building, whereupon she put the documents into Rinaldi's pocket.[3]  *Id.* at 8.  Somehow Rinaldi left the documents behind, but the employee retrieved them, beat Rinaldi to his car, and stuffed them in the door.  *Id*. Rinaldi drove away, circled back, and placed the documents indoors at the foot of a stairway.  *Id.*  Based on this testimony, I proceeded on the assumption that drop service was effective.

On March 29, 2024, I entered judgment by default in favor of Plaintiff in the amount of $4,000,000.00.  *See* ECF No. 23.[4]  On May 29, 2024, execution was issued on the Judgment.  *See* ECF No. 30.  On June 27, 2024, the U.S. Marshals Service served the execution on a number of entities owned by Defendant and on a number of financial

---

[3] Mr. Rinaldi explained that he felt that Defendant recognized him because Rinaldi had made service on Defendant, in hand, in an earlier, related litigation.  However, as will soon be related, on cross examination at a later hearing Rinaldi stated he could not be certain that the person who turned away and departed was in fact Defendant.

[4] The Court amended the judgment on April 26, 2024, to address the fact that Defendant had changed his name.  (See ECF No. 26 n.1.)

institutions.  *See* ECF Nos. 34-40.  That same day, Mr. Tamaki, proceeding pro se, filed a Motion for Relief from Default Judgment.  *See* ECF No. 41.  In effect, upon receipt of actual notice, Mr. Tamaki scrambled into the courthouse seeking relief from the default judgment.  In a one-page letter to the Court, dated June 26, Mr. Tamaki acknowledged an awareness that "the old gentleman tried" to serve him at his place of business in August of 2023 (*i.e.*, before the drop service), but Mr. Tamaki had been too busy and "couldn't sign what [he] didn't know."  *Id.*  Mr. Tamaki also stated that he was accustomed to receiving letters from Attorney Levine seeking money, and that his ex-wife "threw them away" to preserve his health.  *Id.*  Mr. Tamaki stated that he first learned that something was amiss when he got a call from counsel for his corporation, on June 25, 2026, who reported that "something" was "going on."  *Id.*; *see also* second letter dated June 27, 2024 (ECF No. 42).  On July 2, 2024, Mr. Tamaki filed another letter (ECF No. 45) stating that "all our money" in a bank account "was taken out," evidently referring to a hold placed on the account due to either the execution or the attachment order.

On July 4, 2024, counsel entered his appearance on behalf of Mr. Tamaki.  On July 5, 2024, Mr. Tamaki's counsel filed an amended motion for relief from the Default Judgment.  *See* ECF No. 50.  The motion was supported by three witness declarations.  Mr. Tamaki attested that the accusations of child abuse are false and that a prior related litigation by Plaintiff's older sister had caused him great emotional turmoil with significant health consequences.  (That matter ended in a settlement, not in a verdict against Mr. Tamaki.)  When Defendant received a demand letter from Attorney Levine concerning

Plaintiff's claim, his blood pressure spiked.[5]   Thereafter, his ex-wife, Haiying Yang, a cohabitant of his home, discarded all mail of the kind that came to the home.   Then in August of 2023, Defendant understood that there was a process server at his business but the man did not remain and did not leave behind any documents when Defendant requested that he wait a few minutes.   According to Defendant, he only learned of the pendency of this lawsuit when an attorney agent of his company told him on June 25, 2024, that a lien was placed on his business property.   See ECF No. 50-3.

Haiying Yang's declaration is consistent.   She can neither read nor write in English fluently but aggressively discarded "junk mail" which arrived in abundance at the home address, understanding that any mail of consequence to Mr. Tamaki's business interest always goes to his company's post office box.   Ms. Yang did not recognize any formal papers left at the residence as having dire legal import.   Ms. Yang also states that she was the woman who encountered Mr. Rinaldi at the business address on the day he attempted drop service (October 26, 2023) and that when she heard he was delivering mail from Attorney Levine she had an immediate negative reaction and sought to protect Mr. Tamaki because of the distress he experienced in connection with his stepdaughters' accusations. She agrees with Mr. Rinaldi that she returned the papers to Rinaldi's car but denies ever laying hands on him.   She states that she withheld information of the encounter from Mr. Tamaki to protect his health.   *See* ECF No. 50-4.

---

[5] Likely Attorney Levine's August 1, 2023, demand letter, which letter (ECF No. 52-4) was directed to Defendant's former counsel.

6

The third declaration is that of the translator who took down Ms. Yang's testimony in Mandarin and translated it to English.  *See* ECF No. 50-5.

On August 2, 2024, I issued my order denying relief from the Judgment.  *See* ECF No. 59.  In essence, in that order I looked with disfavor on Mr. Tamaki's presentation for shifting responsibility to Ms. Yang.  I determined that Mr. Tamaki had not raised a sufficient justification for relief from judgment based on mistake, inadvertence, or excusable neglect, noting in particular that he admitted his awareness that a process server had tried to serve him in August 2023, and from that time forward he should have monitored his mail and curtailed Ms. Yang's mail-screening responsibilities.  Order at 7-9.  I also looked to Mr. Rinaldi's testimony about other close encounters with Mr. Tamaki, in particular the occasion when Mr. Tamaki allegedly turned away and departed when Mr. Rinaldi approached him in a workplace corridor.  *Id.* at 10.  I chose to exercise my discretion by denying relief from the Default Judgment based on evidence suggesting active evasion of service, trusting as well that drop service would have achieved actual service.  *Id.*

On August 27, 2024, Mr. Tamaki filed his notice of appeal (ECF No. 60).

On April 22, 2025, Mr. Tamaki filed a renewed Motion to Vacate and Set Aside Judgment (ECF No. 86).  That Motion is currently in part denied and in part under advisement and the subject of this Supplemental Indicative Ruling.  Through the Motion, Mr. Tamaki seeks relief based in part on new evidence, which basis for relief I indicated I would deny in an order dated November 21, 2025 (ECF No. 97 at 7-8).  However, in an earlier indicative ruling dated June 17, 2025 (ECF No. 90), I determined that Mr. Tamaki's

request for relief based on the alleged impropriety of the motion for alternate service raised a substantial issue worthy of a hearing.  I called the hearing because Mr. Tamaki presented evidence suggesting that, prior to the motion for alternate service, the process server had neglected to ever attempt to serve him at his residence.  *Id.* at 2-3.

The hearing was conducted on January 12, 2026.  That was the first occasion on which I heard from Mr. Tamaki in person and on which his counsel was able to cross examine the process server.  Plaintiff led in the presentation of evidence.

Plaintiff first called James Adams, who also serves process on behalf of the Cumberland County Sheriff's Office.  Mr. Adams stated that he accompanied Mr. Rinaldi to Defendant's home twice, once on an unknown date to attempt service in hand and once to make the alternate drop service on October 26, 2024.  According to Mr. Adams, on October 26, 2024, Mr. Tamaki opened the door but then began to close it when Adams stated he was there to drop off paperwork.  Adams testified that Tamaki said "no" but Adams inserted the papers into the door as it closed and left them there.  Tr. at 9-10.  On cross examination, Adams testified that he never completed any paperwork or kept any notes concerning the purported service efforts at the Tamaki residence.  Oddly, Mr. Rinaldi had never indicated in the context of prior service-related offers of proof that Mr. Adams had all but achieved in-hand service in an actual encounter with Mr. Tamaki during the October 26 alternate drop service.  Mr. Rinaldi had represented that he performed the drop service rather than Adams.

There were other concerns that arose during Mr. Adams's testimony.  Mr. Adams testified that he might have made the first service in 2022 rather than 2023.  Adams also

testified that when he was contacted by Plaintiff's counsel to prepare for his testimony, he did not remember any dates or any specifics at all about the service he purportedly performed for this case. *Id.* at 24. Recalled to the witness stand later in the hearing, Mr. Adams testified that he "pretty much" remembers that the first time he and Mr. Rinaldi went to Mr. Tamaki's residence, Rinaldi told him he had been to the residence to attempt service the day before. *Id.* at 82. This would be the only evidence of a third attempt at service at the Tamaki residence. Mr. Adams also stated that he attempted service at both the front and side door, without providing any other description of the property. The assertion concerning a side door is somewhat odd given the layout of the Tamaki residence. *See* ECF No. 118-1. For all of these reasons, I find Mr. Adams's testimony entirely unreliable.

Plaintiff's second witness was Mr. Tamaki. Mr. Tamaki testified that he never before encountered Mr. Adams. *Id.* at 41. Mr. Tamaki testified that in August 2023, when Mr. Rinaldi came to his place of work, he was unloading seafood with a forklift and understood that Mr. Rinaldi wanted him to sign some paperwork. Mr. Tamaki thought he needed some time to read the paperwork, so asked Rinaldi to wait. Mr. Rinaldi did not wait and did not leave the paperwork. *Id.* at 46-47, 70-71. Contrary to assertions made in support of the Motion for Alternate Service (ECF No. 5-1 ¶ 6), Mr. Tamaki did not refuse service on this date.

Plaintiff's third witness was Sam Rinaldi. Mr. Rinaldi testified that he went to Mr. Tamaki's residence more than once and to the place of business "many times." *Id.* at 86. Although Mr. Rinaldi did not name Ms. Yang, he testified that when he encountered her at

9

the place of business on October 26, 2023, that she pleaded with him, in evident fear, "to please take the paper back." *Id.* at 91. Concerning that service effort and the prior representation that Mr. Tamaki allegedly turned away in the corridor and left the scene to attempt to prevent service, Mr. Rinaldi testified that he could not guarantee that the person he saw turn and walk away was, in fact, Mr. Tamaki. *Id.* at 106.

Although Mr. Rinaldi relied on the service paperwork to recall what efforts were made at service, and although the paperwork does not indicate incontrovertibly that there were service attempts at Mr. Tamaki's residence, Rinaldi testified reliably that the service attempts on August 10 and September 29 included attempts made at both Mr. Tamaki's residence and his place of work. However, these were the only efforts Mr. Rinaldi made to serve Mr. Tamaki before drop service was authorized. Ultimately, Mr. Rinaldi could not confidently testify that he attempted service three times at the residence before drop service was authorized. *Id.* at 109-18.

Based on the record and testimony, my findings regarding the service efforts on Mr. Tamaki are as follows, in chronological order.

### August 10, 2023

On August 10, 2023, a Thursday, Mr. Rinaldi made a single service attempt at both the residence and the place of work, neither of which achieved service. At the residence, nobody was home. At the place of work, Mr. Tamaki was operating a forklift and asked Mr. Rinaldi to wait, thinking that there was something Mr. Rinaldi wanted him to sign and that he should take a moment to review it. Mr. Rinaldi, understanding that there was no need for Mr. Tamaki to read anything, left the premises without waiting and without

10

leaving the papers, evidently thinking Mr. Tamaki was simply evading service.  Mr. Tamaki, not understanding that there was nothing for him to actually read or sign in Mr. Rinaldi's presence, and that the encounter would simply involve a hand-off of papers, in fact was not trying to evade service.

### August 15, 2023 to September 1, 2023

After the initial failed attempt at service, Plaintiff's counsel emailed Mr. Tamaki's former counsel to request waiver of service of a summons.  Mr. Tamaki's former counsel, Attorney Walter Mckee, responded that he was not authorized to waive service on Mr. Tamaki's behalf.    Plaintiff's counsel forwarded the response to members of the firm proposing that they ask Sam Rinaldi to "make another effort" at service.  Pl.'s Hr'g Ex. 9. Although the evidence of this correspondence invites an inference that perchance whatever communication occurred between Attorney McKee and Mr. Tamaki gave Mr. Tamaki actual notice of a pending civil action in which he was the named defendant, I am not so persuaded on the record.  I credit Mr. Tamaki's testimony that he did not have actual notice of a pending civil action until he learned of it as a consequence of the Marshals' service of the writ of execution.  His lack of awareness may be the product of a failure to exercise the care that more cautious people would observe, but still I found Mr. Tamaki's protestations of ignorance believable and on that basis conclude that he did not have actual notice of the pendency of this civil action through his communication with Attorney McKee.

### September 23, 2023

Mr. Rinaldi did not attempt service again until Saturday, September 23, 2023, once more trying both locations but failing to achieve service at either.  Mr. Adams accompanied

Mr. Rinaldi for the visit to the residence.  Nobody answered.  The visit to the place of work was uneventful.  Mr. Tamaki was not contacted, presumably because he was not present.  Mr. Rinaldi went to the place of work alone and has offered no details concerning the visit.

<u>October 6-13, 2023</u>

On October 6, 2023, Plaintiff filed her motion for leave to serve Mr. Tamaki by alternate means.  On October 13, 2023, Magistrate Judge Nivison issued an order approving service by alternate means relying exclusively on counsel's affidavit to find that Mr. Tamaki avoided service, Plaintiff exercised reasonable diligence to serve him, and alternate service by drop service and mail would provide the needed service.  Based on the finding I have now made with the benefit of cross examination, I conclude that the Motion for Alternate Service would have been denied as too hasty, had the facts as I have found them been evident at the time, given that the effort was far from exhausting and involved only two days on which service was attempted casually at two locations.

<u>October 26, 2023</u>

On October 26, 2023, a Thursday, Mr. Rinaldi traveled to Mr. Tamaki's residence with Mr. Adams.  Someone left the service documents at the door, consistent with the authorization to perform alternate drop service.  Nobody answered the door, contrary to Mr. Adams's testimony.  Mr. Tamaki never acquired the service documents left at his residence on October 26, 2023.  Nor did he ever acquire the service documents sent to the residence by mail.  Ms. Yang disposed of the documents without understanding their import or else in a misguided effort to spare Mr. Tamaki emotional upset.  She did not inform Mr. Tamaki of what she had done.

Also on October 26, 2023, Mr. Rinaldi went to the place of work unaccompanied by Mr. Adams.  Contrary to his prior representations, he did not see Mr. Tamaki turn around in the hallway and walk away to evade service.  Mr. Rinaldi's prior attestation and testimony that this had occurred was based on an unreliable memory, as he acknowledged at the most recent hearing on cross examination.  Mr. Rinaldi attempted to leave the service documents at the place of work but Ms. Yang intercepted them and brought them outdoors to prevent their delivery.  Mr. Rinaldi returned later and left the documents in an undisclosed location inside the building.  Mr. Tamaki did not acquire these documents, likely because Ms. Yang disposed of them.  What became of the service documents mailed to the street address of the place of work is not known.  The business uses a post office box and there is no evidence that the documents were ever mailed to the post office box.  If the mail reached someone inside the building, Mr. Tamaki never saw the service documents or learned of them.

November 2023 through June 2024

Between November 2023 and June 2024 this matter proceeded on the understanding that multiple attempts at service were made at both addresses and that Mr. Tamaki had purposefully evaded service and disregarded legal process of which he presumptively was made aware. In November 2023, the Clerk entered Mr. Tamaki's default.  No notice went out to Mr. Tamaki.  At the beginning of December 2023, an attachment was ordered but evidently was never employed to give Mr. Tamaki actual notice by that means.  At the end of the month of December, Plaintiff filed her motion for default judgment.  No notice went out to Mr. Tamaki.  Three months of time went by before the damages hearing.  The Default

13

Judgment issued near the end of March 2024.  In May 2024, Plaintiff applied for a writ of execution.  Following issuance of the writ of execution, in late June 2024, the U.S. Marshals Service served the writ on Mr. Tamaki's businesses and banks.  It was only upon service by the Marshals that Mr. Tamaki learned both that a lawsuit had been filed against him in this Court and that he was already subject to a default judgment for $4,000,000.00.

**DISCUSSION**

**A.      Motion for Relief from Judgment**

By Maine law, service by alternate means is authorized only on a showing that the movant exercised due diligence in attempting to effectuate personal service when the residential address of the person to be served is known.  Me. R. Civ. P. 4(g)(1).  The Rule anticipates that before alternate service will be awarded, the movant must exhaust all reasonable attempts to serve a defendant.  Me. R. Civ. P. 4 Advisory Committee Note, 2010 Amendment.  The Rule also requires proof either that the person to be served has an unknowable identity or location or it appears that the person is evading service.  Me. R. Civ. P. 4(g)(1).

Based on the affidavit presented in support of the motion for alternate service, it is no surprise that service by alternate means was authorized.  However, I now find that efforts to serve Mr. Tamaki by ordinary means did not fully exhaust all reasonable attempts and that Mr. Tamaki was not actually evading service.  Additionally, I find that even the service by alternate means failed to provide Mr. Tamaki with notice that this civil action was in fact pending against him.

14

I also find that counsel's affidavit in support of the motion for service by alternate means was not knowingly false in regard to either the diligence of service efforts or the existence of evasion on Mr. Tamaki's part.  Even at the default judgment stage, Mr. Rinaldi informed the court that he had made three service attempts at Mr. Tamaki's home address and that Mr. Tamaki had evaded him during drop service at the place of work.  I now find that those two representations were based on an unreliable memory and are unworthy of judgment by default.  But in the context of what occurred before, it was reasonable for counsel to rely on Mr. Rinaldi's representations.

As for Mr. Adams's testimony that he encountered Mr. Tamaki at his door on October 26, 2023, I find that the testimony is not reliable.  Such an encounter would have been known to Mr. Rinaldi, who accompanied Mr. Adams, yet the first word of it came only during the most recent hearing and from Mr. Adams rather than Mr. Rinaldi.  I do not find that Mr. Adams's testimony amounts to perjury, only that his recollection of the day was too poor to credit such a shocking revelation.[6]

Plaintiff argues that res judicata bars my new findings because Mr. Tamaki made successive motions for Rule 60 relief.  I find that assertion unavailing.  Ultimately, I conclude that it would be proper to exercise the discretion authorized by Rule 60, based on extraordinary circumstances.  I so find because I am persuaded that alternate service was

---

[6] I am of the belief that Mr. Adams was confusing service at Mr. Tamaki residence with service at some other residence.  Mr. Adams attempts service between 10 and 15 times a day at various locations.  It is to be expected that without the benefit of contemporaneous notes, of which there were none of probative value, Mr. Adams's memory would be unreliable as to the particulars of service efforts made in 2023.

not actually called for when it was authorized and, in any event, that it did not actually accomplish the objective of effectuating service.

Given the lack of effective service or actual notice, the Judgment of Default is void for lack of service and can be set aside at any time pursuant to Fed. R. Civ. P. 60(b)(4). *Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.*, 953 F.2d 21, 23 (1st Cir. 1992).[7] Furthermore, the misrepresentation that underlay the authorization to perform alternate service should not be rewarded and separately militates in favor of relief.

## B.    Motion for Sanctions

My findings have implications for Plaintiff's Motion for Sanctions (ECF No. 89). The Motion for Sanctions began as a request for the Court to impose sanctions against Mr. Tamaki and his counsel for asserting that Plaintiff's counsel fabricated Plaintiff's case (and her sister's case before that). Since that time, the request has grown to encompass other developments. For example, in their latest briefing on the subject—which was not authorized—Plaintiff's counsel asserts that an attorney's fee or civil penalty sanction should be imposed based on the idea that Mr. Tamaki's effort to obtain relief from the Default Judgment has all along been a charade with no merit whatsoever. *See* Brief in Support of Mot. to Reconsider Indicative Ruling at 12 (ECF No. 117). I have concluded otherwise.

---

[7] Although Mr. Tamaki did not cite subsection (4) of Rule 60(b) in support of his Motion for Relief from Judgment (ECF No. 86), he expressly seeks relief in the Motion based on the contention "that he was never served with summons and complaint." *Id.* at 1. That is sufficient to invoke the relief I have indicated I would afford on remand, should the First Circuit remand the matter for that purpose. In any event, the misrepresentation element of Rule 60(b)(3) can also be employed to grant such relief, since the presumption of service that attended prior rulings grew out of the order that authorized alternate service which in turn grew out of the misrepresentation.

16

To the extent the Motion for Sanctions has also expanded to encompass other concerns such as bar complaints, a suit by Mr. Tamaki against Attorney Levine, or alleged defamatory remarks made by Mr. Tamaki on social media, these are not matters for Plaintiff to pursue in this litigation but for Attorney Levine to pursue in another forum.

That leaves the original request, which was limited to an assertion of a Rule 11 violation for statements made in court papers that Plaintiff's counsel put Plaintiff up to this civil action despite the falseness of her cause. It also now includes an assertion that Mr. Tamaki and his counsel have illegitimately called into question Plaintiff's mental health in certain filings. As to the role of Plaintiff's counsel in the litigation, I am confident that Plaintiff's counsel is above reproach. As to which of the parties speaks the truth, and whether Plaintiff's allegations grow out of mental health issues, these are matters for the jury to determine. I am not willing to award the requested attorney fee sanction or civil penalty based on my own findings as to the truth or falsity of ultimate issues in this case, the subject of which has never before been tried to a verdict. I am also reluctant to award such a sanction given that the judicial process privilege affords ample room in which parties and counsel may maneuver when such serious allegations have been leveled across the aisle. *See Dineen v. Daughan*, 381 A.2d 663, 664 (Me. 1978). For these reasons, the Motion for Sanctions is denied.

What I will consider, however, is a new motion to strike from the record any "immaterial, impertinent, or scandalous matter" pursuant to Rule 12(f) upon a renewed motion that provides pin-point citations to the offending docket items, although I anticipate

17

that the reputation of Plaintiff's counsel will remain in good standing even if no such motion is filed.

## CONCLUSION

Based on the foregoing discussion, I now issue this supplemental "indicative ruling on a motion for relief that is barred by a pending appeal," pursuant to Fed. R. Civ. P. 62.1. Specifically, this Order is drawn to indicate to the First Circuit Court of Appeals that I will grant Defendant's Motion for Relief from Judgment and vacate the Amended Default Judgment if the matter is remanded with allowance that I do so, specifically because I have concluded, based on my findings, that Mr. Tamaki has a viable defense, relief from the default judgment "is appropriate to accomplish justice," *Bouret-Echevarria v. Caribbean Aviation Maint. Corp.*, 784 F.3d 37, 41 (1st Cir. 2015), and relief from default judgment is not unfairly prejudicial to Plaintiff.

Defendant is advised that pursuant to Rule 62.1 he "must promptly notify the circuit clerk under Federal Rule of Appellate Procedure 12.1" of the substance of this Supplemental Indicative Ruling.

Plaintiff's Motion for Sanctions (ECF No. 89) is DENIED.

SO ORDERED.

Dated this 20th day of March, 2026.

/s/ Lance E. Walker
Chief U.S. District Judge

18