UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| STEPHANIE TAMAKI, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO: 2:23-cv-00312-LEW |
| | ) | |
| ATSUSHI TAMAKI, | ) | |
| | ) | |
| Defendant | ) | |

**MOTION TO RECONSIDER AND REOPEN THE EVIDENCE**

NOW COMES the Plaintiff, by and through undersigned counsel, and moves to reconsider the indicative ruling and reopen the evidence, as follows:

BACKGROUND

On 1/12/2026, the Court held a hearing on the Defendant's second motion for relief from judgment. At that hearing, the Court heard testimony from Deputy James Adams, Deputy Sam Rinaldi, and the Defendant, Atchan Tamaki. The court heard testimony that Deputy Adams accompanied Deputy Rinaldi to the Tamaki residence at 133 River's Edge in Portland on 10/26/2023, in order to perform drop service, pursuant to the court order granting service by alternate means. The Court heard testimony from both deputies that they traveled together to the Tamaki residence on two occasions, because of the difficulty in getting the Defendant to answer the door, and the concern that the Defendant recognized the vehicle of Deputy Rinaldi.

Deputy Adams testified that on 10/26/2023, Mr. Tamaki answered the door, and that he refused to accept service, slamming the door as Adams slid the paperwork inside. Despite the consistent testimony from both deputies about the facts and circumstances that led them to drive together in Adam's vehicle, rather than Rinaldi's vehicle, and despite Mr. Adams' in court

identification of the Defendant as the person who answered the door and attempted to refuse service, the Court found Deputy Adams' testimony "entirely unreliable".  The Court went on to suggest that Deputy Adams was confusing service on Mr. Tamaki with some other individual.

In making its ruling as to the credibility of Deputy Adams, the Court considered additional evidence, submitted by the Plaintiff, in the form of a sworn affidavit, together with extensive photos that purport to show the layout of the Defendant's residence.  The court considered the additional evidence in rendering its finding, concluding that "the assertion of a side door is somewhat odd, given the layout of the Defendant's house".

The Defendant did not ask for authority to submit additional evidence at the close of the hearing.  Instead, he asked for time to submit written closing arguments.  The Defendant also stipulated at the close of the hearing that the only issue was the propriety of the affidavit in support of the motion for alternate service, not the execution of the alternate service itself.

Instead of adhering to his promise to submit a written closing argument the Defendant submitted not only his own additional affidavit (ECF 118), but also a letter from his son-in-law, Austin Miller.  In that separate declaration, Mr. Miller tells the Court about his father in law:

> He was not properly summoned and did not understand the legal action initiated against him.  As a non-native English speaker with limited familiarity with the United States legal system, he did not understand the consequences of the documents involved, nor did he understand that immediate legal action or defense was required.
>
> During the relevant period he was also traveling to and from Japan multiple times and to address his ailing father and ultimately the death of his father.
>
> Additionally, opposing counsel has proceeded in a manner that takes advantage of his lack of legal understanding and language limitations.
>
> ECF 119

Mr. Miller suggests, for the first time, that Mr. Tamaki did receive the "documents" but "did not understand the nature or legal consequences of the documents involved".  This is a different

2

explanation than that offered by the Defendant; i.e., that he never received any documents in the first place.[1]

The Plaintiff asks the court to formally reopen the evidence, to allow newly discovered evidence, and additional testimony to shed further light on the Defendant's protestation of lack of awareness of service of process.

ARGUMENT

Rule 59(e) of the Federal Rules of Civil Procedure provides that a motion to alter or amend a judgment must be filed no later that 28 days after entry of the judgment.  The general rule in this circuit is that the moving party must either establish a manifest error of law or must present newly discovered evidence.  In re Financial Oversight and Management Board for Puerto Rico, 998 R.3d 35 (1st Cir. 2021).

I.      There was manifest error of law in reopening the evidence after the hearing, when the Court ordered written closing arguments, not new evidence.

Here, after the hearing, the Court implicitly reopened the record to consider newly discovered evidence in the form of affidavit from Mr. Tamaki and a letter from his son-in-law, Austin Miller.  The Court explicitly referenced the affidavit of Mr. Tamaki in concluding that "the assertion of a side door is somewhat odd given the layout of the Tamaki residence".  The Court never granted any authority to the Defendant to reopen the record to submit newly discovered evidence; in fact, the opposite.  The Court granted the Defendant's request for an "opportunity to make basically closing arguments in writing to summarize the evidence.  Transcript at 130; 2-23; to which the Defendant's attorney responded "correct, judge, and to make arguments, why the Court should rule one way or the other".  Transcript at 130; 24-25.

---

[1] *The letter of Mr. Miller was never referenced by the Court in its new indicative ruling, but neither was it stricken from the record.*

Further, the Court indicated and both parties agreed that "there is no dispute to whether the motion for alternate service was effectuated properly". Transcript at 131.

> MR. RODWAY:  So, Judge, the testimony here today has been pretty much about the leadup to the order for alternate service.  It doesn't seem to be much contest about whether the alternate service order was allowed.  Am I stating that correctly?
>
> THE COURT:  You are as far as I'm concerned… Mr. Cyr, do you agree?
>
> MY CYR:  I - - I agree, judge.

Had the court notified the parties in advance of its indicative ruling that it was reopening the record, and not just ordering "written closing argument" ECF, 32: 1-2, the Plaintiff would have offered newly discovered evidence as well.  First, the Plaintiff would have recalled Deputy Adams, to testify that, as he was leaving the courthouse on 1/12/2026, Mr. Tamaki approached him and said "Where do I know you from?" to which Deputy Adams replied, "from the house".  Clearly, this evidence is relevant to the Defendant's professed lack of knowledge of seeing Mr. Adams at his home.

Instead of just arguing about the propriety of the affidavit in the support of the motion for alternate service, the new evidence challenged whether the alternate service order was followed. Instead of submitting that Deputy Adams had actually dropped service at Mr. Tamaki's door, the affidavit suggested that Deputy Adams had never been to the house.  The implication was that no one dropped service at Mr. Tamaki's door.

Notably, the Defendant did not submit any post hearing evidence from Attorney McKee, nor any evidence to support his contention at hearing that he was out of town on the date of drop service.  Had the court reopened the evidence to both parties, Mr. McKee could have been subpoenaed to testify, ordered to waive attorney/client privilege, and to state conclusively whether Mr. Tamaki was aware of the pending lawsuit.

II.     The newly discovered evidence bears on the veracity of Mr. Tamaki's claims that he was unaware of the existence of a pending lawsuit.

The newly discovered evidence rebuts the suggestion that Mr. Tamaki lacked awareness of a pending lawsuit. First, the encounter between Tamaki and Adams after the hearing as they left the courthouse demonstrates that Tamaki had seen Adams before. Second, the letter of Austin Miller demonstrates that Mr. Tamaki had indeed received documents but that "he did not understand the legal action initiated against him", and that "he did not understand the consequences of the documents involved, nor did he understand that immediate legal action or defense was required". The direct inference is that Mr. Tamaki had indeed received the documents, but that he failed to understand their significance. This is a different story than the one Mr. Tamaki told the Court at hearing. The new evidence lends itself to the conclusion that, while Mr. Tamaki didn't understand the need to file an answer to the civil lawsuit in federal court, he did know that legal paperwork had arrived at his door. This conclusion (that Mr. Tamaki was aware of the paperwork) is bolstered by the fact that not one but two sheriff's deputies testified delivering paperwork to his door; and more in keeping with the totality of the evidence than the Court's conclusion that "Mr. Adams was confusing service at Mr. Tamaki's residence with service at some other residence".

Had that been the case, then not one but two deputies would have had to have been so confused. Both deputies testified to driving together to the Tamaki residence at 133 River's Edge in Portland. Both deputies testified they went together because of the Defendant's prior efforts to avoid service by not answering the door. Mr. Adams testified that Mr. Rinaldi, age 89, did not get out of the car because of an injured leg. Both deputies testified that they drove together in Deputy Adam's car because of the concern that Mr. Tamaki would recognize the car of Mr. Rinaldi. In light of the newly discovered evidence, the suggestion that Mr. Adams was confusing service at Mr. Tamaki's residence with service at some other residence simply does not add up. Both deputies would have had to confuse a conglomeration of facts: (1) traveling together, (2) one of them staying

in the car while the other went to the door, (3) driving Adams car instead of Rinaldi's car, (4) for fear of Rinaldi's car being recognized and (5) serving an Asian man who had earlier attempted to evade service at his well-known business in town.  Perhaps it's possible that another well-known Asian man at another residence answered the door for Deputy Adams, and refused service on another date, but that would be a remarkable coincidence; particularly in light of the new evidence.

The Court initially recognized the fallacy of the Defendant's argument in its original order, denying the Defendant's first motion for relief from judgment:

> Mr. Tamaki cites a mix of mistake, inadvertence, and excusable neglect as reasons for vacating the judgment, along with a passion, and unpersuasive, not to surprise.  Without conceding that the summons and complaint were ever delivered to him home and/or business, Mr. Tamaki attributes the mistake and inadvertence to Ms. Yang, his ex-wife and business associate who is not a party to this case, for discarding most of the couple's mail as junk.  He admits to being neglectful in so much as he allowed Ms. Yang to review their mail despite knowing about her limited faculty with English.  That neglect might be excusable if Mr. Tamaki had no reason to expect that he might be served with a lawsuit.  But Mr. Tamaki admits that "sometime in late August of 2023, someone tried to serve me with a complaint.
>
> ECF 59:7-8

Now, in light of the new evidence, it appears that the Court was right the first time.  The court's subsequent conclusion about Mr. Tamaki's lack of awareness no longer makes sense:

> His lack of awareness may be a product of a failure to exercise the care that more cautious people would observe, but I still found Mr. Tamaki's protestation of ignorance believable, and on that basis conclude that he did not have actual notice of the pendency of his civil action through his communication with Attorney Water McKee.        ECF 121:11.
>
> Mr. Tamaki did not acquire these documents, likely because Ms. Yang disposed of them… Mr. Tamaki never saw the service documents or learned of them.                                                  ECF 121:13.

These findings also fly in the face of the fact that, only 4 days after Deputy Adams claimed to have served Mr. Tamaki at his residence, Deputy Adams served Attorney Robert Levine at his office with Mr. Tamaki's lawsuit alleging extortion.  Transcript at 121:20-24.  Perhaps it was just sheer coincidence that despite (1) multiple efforts of service at both home, and business, (2) multiple

efforts to make service through Mr. Tamaki's attorney, and (3) Deputy Adams testimony that he encountered Mr. Tamaki in person at his residence on 10/26/2023, a complaint by Mr. Tamaki against the Plaintiff's attorney was served on 10/30/23. Now, based upon newly discovered evidence of Mr. Tamaki's knowledge of a pending lawsuit against him, the likelihood of that remarkable coincidence completely evaporates. Mr. Tamaki's protestations of lack of awareness are undone by his own post hearing statements and submissions.

CONCLUSION

The court should grant a new hearing in this matter following remand. The Defendant's post hearing written submission to the Court went well beyond written closing arguments, and included new evidentiary submissions, without prior authorization by the court, and opportunity for the Plaintiff to respond. In light of newly discovered evidence rebutting the Defendant's lack of awareness of appending lawsuit, a new hearing should be convened. The new hearing should include testimony from Walter McKee, the Defendant's prior lawyer, about whether he advised the Defendant of a pending lawsuit, testimony from Austin Miller about whether Mr. Tamaki received the legal documents, testimony from James Adams, about the courthouse encounter with Mr. Tamaki following the first hearing.

Dated:  April 8, 2026                                    /s/Robert A. Levine, Esq.

                                                         attorneyralevine@gmail.com
                                                         17 South Street
                                                         Portland, Maine 04101
                                                         207-871-0036


                                                         /s/Peter E. Rodway, Esq.
                                                         peter@rodwaylaw.com
                                                         P.O. Box 444
                                                         Portland, Maine 04112-0444
                                                         207-773-8449

7

## CERTIFICATE OF SERVICE

I hereby certify that today I have electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to all counsel of record.


Dated: April 8, 2026

/s/Robert A. Levine, Esq.
attorneyralevine@gmail.com
17 South Street
Portland, Maine 04101
207-871-0036

/s/Peter E. Rodway
peter@rodwaylaw.com
P.O. Box 444
Portland, Maine 04112-0444
(207)773-8449