**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| STEPHANIE TAMAKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  2:23-cv-00312-LEW |
| | ) | |
| | ) | |
| ATSUSHI TAMAKI, a/k/a | ) | |
| ATCHAN TAMAKI, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT, MR. TAMAKI'S OBJECTION
TO PLAINTIFF'S MOTION TO REINSTATE PRE JUDGMENT ORDER OF
ATTACHMENT AND TRUSTEE PROCESS

**Now Comes** Defendant, Atsushi Tamaki aka Atchan Tamaki ("Defendant" or "Mr. Tamaki"), through his counsel, and hereby objects to Plaintiff's Motion to Reinstate Pre Judgment Order of Attachment and Trustee Process pursuant to Maine Rules of Civil Procedure 4A and 4B.  In support hereof Defendant further states:

PROCEDURAL POSTURE

1. On November 10, 2023, Plaintiff filed her original Motion for Attachment and Trustee Process (ECF No. 10).

2. This Court granted Plaintiff's motion without objection as Mr. Tamaki had no notice of the proceedings and did not file any objection with the court (ECF No. 13).   The Court's Order was based solely on the arguments of Plaintiff's counsel and Plaintiff's uncontested affidavit.

3.  Subsequently, on April 26, 2024, Plaintiff obtained a default Judgment.  (Amended Judgment and Order, ECF No. 26).

4.  Defendant filed an Amended Motion for Relief from Final Judgment and to Stay and Vacate Execution of Judgment on July 5, 2024 (ECF Nos. 50).  The Court ultimately denied Defendant's Amended Motion for Relief from Final Judgment and to Stay and Vacate Execution of Judgment (ECF No. 59).  Defendant appealed (ECF No. 60).  Following Defendant's appeal of ECF No. 59, this Court required and Mr. Tamaki filed with the Court a civil bond on September 19, 2024, in the amount of $4,400,500, to secure Plaintiff's default judgment pending appeal (ECF No. 66).  Defendant's appeal of ECF No. 59 is still pending with the First Circuit Court of Appeals, however, the first circuit has recently stayed the appeal and remanded the case back to the District Court.

5.  On September 26, 2024, Defendant filed a Motion to Dissolve Liens and Attachments (ECF No. 69).  This Court issued it's Order Dissolving Attachment and Staying Execution of Judgment Pending Appeal (ECF No. 79).

6.  Defendant filed a second Motion to Vacate Judgment and to Set Aside Judgment on April 22, 2025 (ECF No. 86).  Based on Defendant's second Motion to Vacate, this Court issued three orders:  Indicative Ruling, June 17, 2025 (ECF No. 90);  Order, November 21, 2025 (ECF No. 97);  and Supplemental Indicative Ruling, March 20, 2026 (ECF No. 121).  Defendant appealed this Court's November 21, 2025, Order (ECF No. 100).  This second appeal is also still pending with the First Circuit Court of Appeals, however, as noted above, the First Circuit has stayed this second appeal and remanded the case back to the District Court.

7. In it's Supplemental Indicative Ruling, this Court indicated that it would grant Defendant's second Motion to Vacate and lift the default judgment once the First Circuit remanded the matter back to the District Court.

8. Pursuant to Rule 12.1 of the Federal Rules of Appellate procedure, Defendant promptly notified the First Circuit of this Court's Supplemental Indicative Ruling and requested the matter be remanded to the District Court.

9. The First Circuit has since remanded the matter back to the district court based on this Court's Supplemental Indicative Ruling, March 20, 2026.

10. Defendant's Civil Bond in the amount of $4,400,500 is still active.

11. With the above back drop, Plaintiff, anticipating the Court's lifting of the Amended Judgment pursuant to it's Supplemental Indicative Ruling and thus dissolving Defendant's bond, has filed her Motion to Reinstate the Court's Pre Judgment Order of Attachment.

12. Defendant, now having a full opportunity to respond, objects to Plaintiff's request for Attachment and Trustee Process as follows:

ISSUES

13. At issue, is whether this Court's December 6, 2023, Order, granting Plaintiff's Motion for Attachment in the amount of $2,000,000 (ECF No. 13) should be reinstated?

14. More particularly stated, the issue is whether Plaintiff has alleged sufficient facts in her affidavit in support of her motion for attachment to prove "more likely than not" that she will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment?

## THE LAW AS IT PERTANS TO
## ATTACHMENT AND TRUSTEE PROCESS

15. As the Court noted in its December 6th Order, Rule 64 of the Federal Rules of Civil Procedure provides that the provisional remedies like attachment are available in a federal court to the extent they would be available in a state court within the District.

16. In order to grant a motion for attachment and trustee process, the court must find that it is "more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment." Me.R.Civ.P. 4A(c), 4B(c); Lund v. Smith, 787 F. Supp. 2d 82, 83 (D. Me. 2011).

17. In her original Motion for Attachment and Trustee Process, Plaintiff quotes the correct Maine Rules of Civil Procedure 4A(c) and 4B(c) which sets forth the "more likely than not" standard. *See* M.R.Civ.P. 4A(c) and 4B(c). However, Plaintiff goes on to erroneously cite Bates Fabrics, Inc v. LeVeen, 590 A.2d 528, 530 (Me. 1991) (the standards for governing pre-judgment attachment are "quite liberal" and the reasonable likelihood of success standard "presents a "relatively low hurdle") and Bowman v. Dussault, 425 A.2d 1325, 13,28 (Me. 1981) ("the trial court is not required to decide whether it is more likely than not that the moving party will prevail, "but only" whether the underlying claim is substantial enough that there appears to be a reasonable possibility of recovery"). See ECF No. 10, pg 4.

18. Plaintiff's reliance on *Bates Fabrics, Inc.* and *Bowman,* both decided before 1992, to set forth the correct standard that governs pre judgement Attachment and Trustee Process is misguided and simply wrong.

19. In 1992, Rules 4A(c) and 4B(c) were amended to heighten the standard of proof necessary to obtain an attachment or trustee process from the "reasonable likelihood"

standard to one requiring a showing that it is "more likely than not" that the plaintiff will recover judgment in an amount that equals or exceeds "the aggregate sum" of the attachment sought and other available security.  *See* Advisory Committee Notes 1992 Amendments.  "The change in the standard for attachment responds to prevailing concerns that attachments are too freely given under the existing standard." *See* M.R.Civ.P. 4A(c) and 4B(c) Advisory Committee Notes 1992 Amendments.

20. "The purpose of the increased standard is to strike a more even balance between plaintiff and defendant in the use of attachment." *See* id.

21. The required showing for both liability and damages is to be made through affidavits; there is no right to an evidentiary hearing. Atlantic Heating Co., Inc. v. John Lavin, 572 A.2d 478, 479 (Me. 1990).

22. Specificity is required in the showing for the amount of the attachment, and this amount cannot be offset by claims of the non-moving party. *See* Casco N. Bank, N.A., et al. v. New England Sales, Inc., et al., 573 A.2d 795, 797 (Me. 1990).

23. Maine Rules of Civil Procedure 4A(i) and 4B(i) states in pertinent part as follows: "Requirements for Affidavits. Affidavits required by this rule shall set forth specific facts sufficient to warrant the required findings and shall be upon the affiant's own knowledge, information or belief; and, so far as upon information and belief, shall state that the affiant believes this information to be true."  M.R.Civ.P. 4A(i) and 4B(i).

24. Maine Rules of Civil Procedure 4A(d) states as follows:  "Approval of Limited Attachment or Substituted Security. (1) Attachment of Specific Property. In the order approving an attachment, the court shall specify that the attachment is to issue solely against particular property or credits upon a showing by the defendant (A) that the

Page **5** of **13**

property or credits specified are available for attachment and would, if sold to satisfy any judgment obtained in the action, yield to the plaintiff an amount at least equal to the amount for which attachment is approved in accordance with the criteria of subdivision (c), and (B) that the absence of such a limitation will result in hardship to the defendant." M.R.Civ.P 4A(d) and 4B(d).

## ARGUMENT

25. Plaintiff's Motion to Reinstate the Court's December 6th Order of Attachment and Trustee Process should be denied or in the alternative, attachment should only issue for the specific property requested by Defendant pursuant to M.R.Civ.P. 4A(d) and 4B(d).

26. The Court cannot find, based on Plaintiff's Affidavit and the affidavits submitted by Defendant that it is "more likely than not" that Defendant is liable to Plaintiff or that Plaintiff has shown specific damages pursuant to the "more likely than not" standard.

27. In Bowman v. Dussault, 425 A.2d 1325 (Me. 1981) the Law Court stated: "Because prejudgment attachment can work serious hardship on a defendant before the merits of the plaintiff's case are fully determined, the attachment procedures prescribed by legislation and implementing court rules must be strictly adhered to." *See* Bowman at 1328 citing Englebrecht v. Development Corp., Me., 361 A.2d 908, 910 (1976).

28. Plaintiff's original Motion for Attachment relied exclusively on Plaintiff's Affidavit in Support of her Motion for Attachment dated October 14, 2023. *See* ECF No. 10 and 10-1. Plaintiff's Affidavit does not meet the strict requirements set forth in M.R.Civ.P. 4A(i) and 4B(i). Maine Rules of Civil Procedure 4A(i) and 4B(i) requires a jurat statement that "shall be upon the affiant's own knowledge, information or belief; and, so far as upon information and belief, shall state that the affiant believes this information to be true."

Page **6** of **13**

M.R.Civ.P. 4A(i) and 4B(i). In this case, Plaintiff's Affidavit contains the California Jurat Certificate which states as follows: "A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document." ECF 10-1. Plaintiff's failure to conform, in her Affidavit, with the strict requirements set forth in M.R.Civ.P. 4A(i) and 4B(i), is ground to deny Plaintiff's Motion for Attachment and Trustee Process. Plaintiff's Motion to Reinstate similarly fails to provide any additional affidavits to support attachment, nor does it cite to any parts of the record to support a finding that it is more likely than not that Plaintiff will prevail in either liability or damages. For the above reasons, Plaintiff's Motion to Reinstate Attachment and Trustee Process should be denied.

29. The Law Court reiterated in Bowman, "Only with such specific facts at hand is the judge in a position to exercise properly his discretion in deciding whether there is a reasonable likelihood that the movant will recover a judgment equaling or exceeding the amount of the attachment. Because such specific facts about damages were lacking in the movant's affidavits, we must vacate the Superior Court's order approving the attachment, as unsupported by the kind of evidence expressly required by Rule 4A. *See* Bowman at 1329-1330. Applying the lower standard of "reasonable likelihood" the Bowman Court found the affidavit set forth specific facts to show liability, but that the affidavits lacked sufficient specificity with respect to damages. As set forth above, since the Bowman case, the standard has risen to "more likely than not." *See* M.R.Civ.P. 4A(c) and M.R.Civ.P. 4B(c).

30. The facts alleged in Plaintiff's Affidavit in Support of Attachment are insufficient to establish liability by the "more likely than not" standard.

31. Plaintiff's Affidavit in Support of her Motion for Attachment and Trustee Process fails to set forth sufficient fact to prove that she more likely than not will recover judgment. Plaintiff provides no other proof of Defendant's alleged conduct other than her say that it happened.

32. Since the Court's December 6th Order of Attachment, Defendant has submitted proof in the form of affidavits and declarations that show Plaintiff's claims are false and made up.

33. In his Amended Motion for Relief from Final Judgment, incorporated herein by reference, Defendant set forth sufficient facts to prove he has a meritorious defense to Plaintiff's allegations.  *See* ECF No. 50.  In his Declaration of Atsushi Tamaki AKA Atchan Tamaki, incorporated herein by reference, Defendant stated "The claims and accusations filed by Stephanie Tamaki in that lawsuit are flat out lies, false and untrue." *See* ECF No. 50-3, 158.  In his Answer to Plaintiff's Complaint, Defendant denied all allegations set forth by Plaintiff and alleged nine (9) affirmative defenses.  *See* ECF No. 50-1, 144.

34. In his Reply Brief in Support of his Motion for Relief from Judgment, incorporated herein by reference, Defendant provided additional declarations and arguments that largely discredit Plaintiff's claims.  *See* ECF No. 58, 318.  Plaintiff's allegations go back 37 to 38 years "making these allegations incredulous based on the passage of time alone." *See* id.  Defendant himself testified before this Court over and over again that there was no sexual abuse and that the so-called facts never occurred.  *See* id at 319.  Plaintiff's allegations from when she was 5 years old (37 years ago) have little credibility as

established by David J. Levy, Ph.D.'s study, Forget Me Not:  The Persistent Myth of Repressed Memories, Psychology Today, Oct. 6, 2019.  See id at 320.  This Court, in its August 2, 2024, Order denying Defendant's Amended Motion for Relief from Judgment concludes Defendant established a meritorious defense based on his "blanket denial of the allegations".  *See* ECF No. 59, 336.

35.  In his second Motion for Relief from Judgment, incorporated herein by reference, filed April 22, 2025, Defendant provides this Court with additional declarations and evidence from various individuals casting doubt and directly contradicting Plaintiff's allegations. *See* ECF No. 86, 720.  "According to the newly discovered evidence, both lawsuits appear to have been prosecuted, outrageously, based upon downright abusive lies for the purpose of achieving pecuniary gain."  *See* ECF No. 86, 712.  In support of Defendant's claim that he never sexually abused Plaintiff, Defendant provided the following declarations, all incorporated herein by reference:

36. Joint Declaration of Athena and Kenta Tamaki:  Plaintiff admits to both individuals and others present during her sister's funeral that the sexual abuse never happened.  See ECF No. 86-1, 739 and 740.

37. Declaration of Kenta Tamaki Regarding October 21, 2024 Phone Call With Stephanie Tamaki:  Plaintiff explicitly told Kenta in a phone conversation that the allegations made against Defendant were fabricated.  See ECF No. 86-1, 732-737.

38. Declaration of Athena Tamaki (ECF No. 96-1, 1110):  "At some point during the conversation, Stephanie was asked whether she had been sexually abused by her father, Atchan.  In response, Stephanie expressly and directly said to those staying at Jennifer's

house, that she did not have any issues with her father." *See* Declaration of Athena Tamaki, ECF No. 96-1, 1110.

39. Declaration of Hana Tamaki (ECF No. 96-2, 1112): Hana Tamaki declared that she too was present during the funeral of her sister Jennifer in April of 2022, when Stephanie stated that she had never been sexually abused by the Defendant. *See* Declaration of Hana Tamaki, ECF No. 96-2, 1112).

40. Declaration of Austin Miller (ECF No. 96-3, 1113):  Austin Miller declared that he was present with his wife, Hana and others during Jennifer's funeral in April of 2022 when Stephanie told everyone in the room that Defendant did not sexually abuse her. *See* Declaration of Austin Miller, ECF No. 96-3, 1113.

**41.** Based on the above declarations and evidence, Plaintiff has failed to establish that it is more likely than not that she will recover judgment against Defendant.  This case amounts to a credibility contest.  Without a trial, to assess credibility, there is no way for the court to find that it is more likely than not that Plaintiff will obtain a judgment in her favor.  Without this finding, attachment and trustee process is unwarranted in this case.  Plaintiff's Motion to Reinstate Attachment and Trustee Process should be denied.

42. Plaintiff has failed to set forth specific facts in her affidavit sufficient to establish a specific amount of damages by the "more likely than not" standard.  Plaintiff has failed to set forth any specific facts as they relate to damages other than the general nature of the prospective damages("I have suffered severe emotional distress, pain and suffering, loss of enjoyment of life, and permanent psychological trauma").  ECF No. 10-1 paragraph 10.  As in the *Bowman* case cited above, Plaintiff has failed to provide the specifics regarding damages required by Rule 4A and 4B.

43. Attachment and Trustee Process pursuant to Rules 4A and 4B is not available on Plaintiff's Assault and Battery count.  For purposes of Plaintiff's motion for attachment, the court is only to consider potential damages associated with Plaintiff's intentional infliction of emotional distress allegations.  In her affidavit, Plaintiff does not provide any facts relating to special damages (cost of treatment received or cost of anticipated future treatment).  Plaintiff further fails to articulate and provide specific facts relating to any pain and suffering component of her damages claim.  Lastly, Plaintiff has failed to set forth specific facts that establish a specific amount of punitive damages.

44.  For all the reasons set forth above, Plaintiff's Motion to Reinstate Attachment and Trustee Process should be denied.

IN THE ALTERNATIVE:  DEFENDANT REQUESTS TO DISSOLVE BOND AND FOR LIMITED SPECIFIC ATTACHMENT

45. In the alternative, should the court find that Plaintiff has established that it is more likely than not that Defendant is liable and a specific amount for damages, Defendant requests that this Court dissolve the bond currently in effect and issue a limited order of attachment, attaching the following specific properties pursuant to M.R.Civ.P. 4A(d) and 4B(d).

46. As noted above, this court shall specify specific property for attachment so long as the property so specified is available for attachment and if sold would be sufficient to satisfy any judgment.  See M.R.Civ.P. 4A(d) and 4B(d).  In addition, the rules require Defendant to make a showing that absent a limited attachment, Defendant would suffer "hardship".  *See* id.

47. In a sworn affidavit attached hereto and incorporated herein by reference, Defendant suggests two pieces of real estate owned by him outright without encumbrances:

(1)Hemlock Street, Portland, Maine is owned by Hemlock Street, LLC which in turn is owned 100% by Defendant and valued at $850,000.  See Defendant, Mr. Tamaki's Affidavit in Support of Limited Attachment, attached hereto;  see also Real Estate Tax bill and valuation attached hereto.   (2)133 Rivers Edge Drive, Portland, Maine owned by Defendant outright without encumbrances valued at $1,343,360.  See Defendant, Mr. Tamaki's Affidavit in Support of Limited Attachment, attached hereto;  see also Real Estate Tax bill and valuation attached hereto.

48. Defendant  has further set forth in the attached affidavit sufficient specific facts that demonstrate the further attachment of other property not listed in his affidavit would cause him hardship giving the nature of his business.  *See* Defendant, Mr. Tamaki's Affidavit in Support of Limited Attachment, attached hereto.

49. Mr. Tamaki's Affidavit in Support of Limited Attachment, sets forth sufficient facts for the Court to find that the Hemlock Street Property and the 133 Rivers Edge Property are available for attachment;  if sold would be sufficient to satisfy any judgment;  and absent a limited attachment, Defendant would suffer "hardship".  See id.

**Wherefore,** Defendant prays that this Honorable Court denies Plaintiff's Motion to Reinstate Pre Judgment Order of Attachment and Trustee Process or in the alternative, orders limited attachment as prayed for above.

DATED: April 14th, 2026

Respectfully submitted,

/s/ Peter J. Cyr

_____

Peter J. Cyr, Esq.

Attorneys for Defendant:
Atsushi Tamaki aka Atchan Tamaki

Peter J. Cyr, Esq. (Maine Bar ID No. 9037)
www.attorneypeterjcyr.com
Law Offices of Peter J. Cyr
85 Brackett St.
Portland, ME 04102
Telephone: (207) 828-5900
Facsimile: (207) 828-5909

James J. Berdelle, Esq., *pro hac vice* (Illinois bar #6185089)
james@dcklawfirm.com
Demidchik Law Firm PLLC
3031 Tisch Way, Ste 300
San Jose, CA 95128
Telephone: (415) 960-3333
Facsimile: (212) 810-7257

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that, on this date, the foregoing was filed via ECF on April 14, 2026, which will serve all parties and all counsel of record via Electronic Mail this 14th day of April 2026.

/s/ Peter J. Cyr_____
Peter J. Cyr (9037)
peter@peterjcyrlaw.com